**Jamie JIMMERSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 82A01–0009–CR–327.

Court of Appeals of Indiana.

June 13, 2001.

720

Robert Canada, Evansville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Jamie Jimmerson appeals the forty-year sentence imposed after a jury convicted

him of voluntary manslaughter, a Class A felony. We vacate the sentence and remand.

### Issue

We restate the issue before us as whether the trial court considered improper aggravators and failed to consider significant mitigators when it enhanced Jimmerson's sentence by ten years.

### Facts

On August 7, 1999, Jimmerson confronted the victim, Rodney Thomas, about two prior incidents when Thomas had forced Jimmerson to give him money, the last of which had occurred approximately twenty or thirty minutes earlier. A fight ensued, during which Jimmerson shot and killed Thomas. The State charged Jimmerson with murder. The jury did not accept Jimmerson's claim that he acted in self-defense, but did believe he was acting under sudden heat caused by Thomas' provocation and convicted Jimmerson of voluntary manslaughter instead of murder. At sentencing, the trial court found as aggravators that Jimmerson was in need of correctional treatment that could best be provided by commitment to a penal facility and that he had a criminal history, based upon a juvenile delinquency adjudication for burglary; the court also believed there was a risk Jimmerson would commit another crime. It found Jimmerson's age (nineteen when the crime was committed) to be the only significant mitigating circumstance, expressly rejecting the proposed mitigator that Jimmerson was mentally disabled.[1] The trial court enhanced Jimmerson's sentence by ten years, resulting in a total sentence of forty years. Jimmerson now appeals that sentence.

### Analysis

■■■ We review sentences with the knowledge that reasonable minds may differ as to what sentence is appropriate in any given case. *Allen v. State,* 720 N.E.2d 707, 715 (Ind.1999). Given the degree of subjectivity that cannot be eliminated in the sentencing process, it would be inappropriate for us merely to substitute our opinions for those of the trial judge. *Id.* We therefore generally defer to a trial court's sentencing determination. "When enhancing a presumptive sentence, the trial court must identify all 'significant' aggravating and mitigating factors, state why each is considered aggravating or mitigating, and articulate the balancing process by which the court determined that the aggravating factors outweighed the mitigating factors." *Bluck v. State,* 716 N.E.2d 507, 511 (Ind.Ct.App.1999). On appeal, we reexamine all valid aggravating and mitigating circumstances to consider whether the sentence imposed was "manifestly unreasonable in light of the nature of the offense and the character of the offender." *Carter v. State,* 711 N.E.2d 835, 841 (Ind.1999) (citing former Ind.Appellate Rule 17(B)). The finding of mitigating factors is not mandatory and rests within the discretion of the trial court. *Allen,* 720 N.E.2d at 715–16. Only when the trial court fails to find a significant mitigator that is clearly supported by the record is there a reasonable belief that it was improperly overlooked. *Id.*

### I. Aggravators

■■■ Jimmerson first claims the trial court erred in applying the "history of criminal or delinquent activity" aggravator of Indiana Code Section 35–38–1–7.1(b)(2). Specifically, he alleges the only evidence of

---

**1.** Jimmerson's mother testified, and a doctor's report allegedly confirmed, that he had an I.Q. of only 70.

such activity contained in the pre-sentence report, which merely stated that he had been placed on probation for one year for committing burglary in 1996, was insufficient to support the finding of this aggravator. The State essentially concedes this argument, stating that the trial court "may have improperly used Jimmerson's juvenile criminal record as an aggravator" because nothing in the record relates the specifics of the juvenile offense. Appellee's Brief p. 5. Indeed, our supreme court has held that it is improper to rely on a juvenile delinquency history as an aggravator when "the presentence report and the rest of the record before the trial court neither reveal[ ] any facts about the events constituting [the] juvenile history nor demonstrate[ ] any adjudications." *Day v. State*, 560 N.E.2d 641, 643 (Ind. 1990). Furthermore, "even when a juvenile court *has* made a determination of delinquency, only the acts committed by the juvenile may constitute a criminal history to support enhancement of a sentence." *Id.* (emphasis in original). Here, while the presentence report demonstrates the existence of a delinquency adjudication (because Jimmerson was placed on probation), no facts about the burglary are revealed. Thus, because of the State's concession on this point, we conclude that the evidence in the record is insufficient to support the use of the prior criminal or delinquent activity aggravator. *See Allen v. State*, 722 N.E.2d 1246, 1256–57 (Ind.Ct. App.2000) (holding trial court improperly relied on defendant's juvenile history of arrests and one juvenile adjudication to impose consecutive sentences where pre-sentence report did not enumerate specific facts surrounding each arrest, even though the specific offenses allegedly committed were identified).[2]

Second, Jimmerson claims, and the State again concedes, that the trial court improperly applied the "in need of correctional or rehabilitative treatment that can best be provided by commitment of the person to a penal facility" aggravator listed in Indiana Code Section 35–38–1–7.1(b)(3). In order to properly use this aggravator to enhance a sentence beyond the presumptive term, "the trial court *must provide a specific or individualized statement* of the reason why this defendant was in need of correctional and rehabilitative treatment that could best be provided by a period of incarceration in a penal facility in excess of the presumptive sentence term." *Hollins v. State*, 679 N.E.2d 1305, 1308 (Ind.1997) (emphasis added). Here, the trial court merely recited the statutory language of the aggravator and provided no individualized statement as to why it applied to Jimmerson. Hence, we agree the aggravator was improperly applied. *See id.*

Notwithstanding its concession that these two aggravators were improperly applied, the State argues that Jimmerson's enhanced sentence may be affirmed because the trial court mentioned two other potential aggravators: the risk that Jimmerson would commit another crime and the nature and circumstances of this particular crime. As for the risk of committing another crime, it seems logical that courts would often assess this risk by con-

---

2. In spite of the State's concession on this point, we note that in *Davenport v. State,* our supreme court held that where "the presentence investigation report specifically detail[ed] defendant's juvenile charges and true findings, including one for child molesting[,]" the trial court properly used this as evidence of an aggravating factor. 689 N.E.2d 1226, 1232 (Ind.1997). The opinion does not relate that any specific underlying facts about the child molesting were, or had to be, included in the presentence report, apart from the existence of a juvenile disposition and an identification of the offense committed.

sidering a defendant's history of criminal activity. That happened in this case, as the trial court found there was a risk Jimmerson would commit another crime "given the circumstances surrounding this offense and the prior juvenile adjudication." Record p. 345. We have already determined that the available evidence of Jimmerson's juvenile delinquency was insufficient to support application of the "history of criminal or delinquent activity" aggravator. Nevertheless, a trial court may consider a defendant's juvenile record in assessing the risk of his committing another crime and in determining his sentence, even if the available record is not sufficient to establish the history of delinquent activity aggravator. *See Allen,* 722 N.E.2d at 1257 n. 11. Indiana Code Section 35–38–1–7.1(d) "gives a sentencing court the flexibility to consider *any* factor which reflects on the defendant's character, good or bad...." *Tunstill v. State,* 568 N.E.2d 539, 545 (Ind.1991) (emphasis added).

 We also agree that an appellate court may rely on the nature and circumstances of an offense in affirming an enhanced sentence, even where the trial court's stated aggravators were held to be improper and the trial court did not rely on the nature and circumstances in enhancing the sentence. *Mitchem v. State,* 685 N.E.2d 671, 680 (Ind.1997). However, to enhance a sentence based on the particular individualized circumstances of the offense, there generally should be some indication that the manner in which the crime was committed was particularly egregious, beyond what the legislature contemplated when it prescribed the presumptive sentence for that offense. *See Smith v. State,* 655 N.E.2d 532, 540 (Ind.Ct.App.1995), *trans. denied; see also, e.g., Mitchem,* 685 N.E.2d at 680 (affirming enhanced sentence in absence of other valid aggravators based on number of times victims were

shot, fact that defendant forced victims to kneel and face him when he shot them, and fact that female victims were repeatedly raped and forced to perform deviate sexual acts). We cannot agree with the State that this case warrants an aggravated sentence because "the evidence showed Jimmerson as [sic] angry at Thomas when he went to find him and intended to do him harm." Appellee's Brief p. 6. Being angry at and intending to harm the victim are part and parcel of every voluntary manslaughter case.

There is more here, however. By his own testimony, Jimmerson sought out Thomas to "confront him" about the previous thefts. Record p. 287. The trial court also stated "that the victim as [sic] where he had a right to be, with his friends, and did not seek you out, did not take any action until you came by on the bicycle dressed as you were [in dark clothing and gloves in the middle of August] and armed as you were [with a loaded gun hidden in his waistband]...." Record p. 350. In a very similar case, our supreme court found the trial court did not err in enhancing a defendant's sentence for voluntary manslaughter in part on the basis that the defendant could have avoided confrontation with the victim but instead carried a concealed deadly weapon to a place where he knew the victim could be found with the purpose of "resolving" an existing conflict with the victim. *Ellis v. State,* 567 N.E.2d 1142, 1144–45 (Ind.1991). In the present case the trial court did not rely on the above facts to aggravate Jimmerson's sentence, but instead recited them as grounds for rejecting the proffered mitigators of the victim inducing the offense, substantial grounds tending to excuse or justify the crime, or strong provocation. *See* Ind. Code § 35–38–1–7.1(c)(3), (4), and (5). Nevertheless, we believe the nature and

circumstances of this case may be slightly aggravating, in light of *Ellis*.[3]

### B. Mitigators

■ Jimmerson claims the trial court erred and effectively reversed the jury's finding that "strong provocation" existed in this case by not applying the "strong provocation" mitigator found in Indiana Code Section 35–38–1–7.1(c)(5) in determining the appropriate sentence. We disagree. Our supreme court has observed that "[s]udden heat is a *mitigating factor* which reduces murderous activity from Murder to Voluntary Manslaughter." *Horan v. State*, 682 N.E.2d 502, 507 (Ind. 1997) (emphasis added). Sudden heat, in turn, requires provocation sufficient to engender passion that obscures the reason of an ordinary person, prevents deliberation and premeditation, and renders the defendant incapable of cool reflection. *Griffin v. State*, 644 N.E.2d 561, 562 (Ind.1994). When the jury determined that the mitigating factor of sudden heat existed in this case because of Thomas' provocation, Jimmerson benefited by being convicted of voluntary manslaughter instead of murder, and the presumptive sentence he faced thereby was immediately reduced by twenty-five years. *Compare* Ind.Code § 35–50–2–3 (fifty-five year presumptive sentence for murder) *with* Ind.Code § 35–50–2–4 (thirty year presumptive sentence for Class A felonies). We believe it would contravene clear legislative intent to hold that a person convicted of voluntary manslaughter is entitled to double mitigation of his sentence, once by being convicted only of voluntary manslaughter instead of murder and again by use of the "strong provocation" statutory mitigator. We decline to so hold, and the trial court did not abuse

its discretion in refusing to apply this mitigator.

■ Next, Jimmerson claims the trial court erred by not finding his alleged limited intellectual capacity to be a mitigating factor. He asks us to consider this a mitigator "much as the defendant's mental illness in *Biehl v. State*," 738 N.E.2d 337 (Ind.Ct.App.2000), *trans. denied*. Appellant's Brief p. 10. Even assuming mental illness can be equated to limited intellectual capacity or mental retardation, we do not believe *Biehl* required the trial court to mitigate Jimmerson's sentence based upon his mother's testimony that he had an I.Q. of 70 and upon a doctor's report defense counsel allegedly possessed but never placed into evidence. First, we reiterate the general proposition that "[w]hile a trial court certainly must take into account any established mitigating circumstances, a court does not err in failing to find mitigation when a mitigation claim is 'highly disputable in nature, weight, or significance.'" *Smith v. State*, 670 N.E.2d 7, 8 (Ind.1996) (quoting *Wilkins v. State*, 500 N.E.2d 747, 749 (Ind.1986)). Second, in *Biehl* we listed several considerations that bear on the weight, if any, that should be given to mental illness in sentencing, including: (1) the extent of the defendant's inability to control his or her behavior due to the disorder or impairment; (2) overall limitations on functioning; (3) the duration of the mental illness; and (4) the extent of any nexus between the disorder or impairment and the commission of the crime. *Biehl*, 738 N.E.2d at 340.

Here, the trial court did not ignore the evidence of Jimmerson's limited I.Q. but concluded it was not entitled to mitigating weight. It noted that Jimmerson had tes-

---

**3.** We are not convinced the circumstances here are *as* aggravating as they were in *Ellis*. Jimmerson sought to confront Thomas about two previous criminal acts he had committed upon Jimmerson; Ellis, on the other hand, sought to confront the victim about rumors he was spreading that Ellis was a homosexual, which was not a criminal act.

tified coherently, that he had clearly understood everything that was asked of him, and that his detailed testimony was likely responsible for him being convicted of voluntary manslaughter instead of murder. Based on personal observations, the trial court ultimately concluded "that you are able to conform yourself to what the law requires and you do understand what the law requires." Record p. 346. There is neither anything in the record that causes us to doubt this conclusion, nor is there any indication that any of the factors listed in *Biehl* were implicated in favor of finding Jimmerson's limited intellectual capacity was mitigating. This claimed mitigator was shown to be "highly disputable" in its significance, and the trial court did not abuse its discretion in failing to give it any weight. *Cf. Young v. State*, 696 N.E.2d 386, 391–92 (Ind.1998) (holding trial court erred in giving no mitigating weight to evidence of defendant's mental retardation where record clearly indicated he functioned with the mental capacity of a child and he had been found to be mentally retarded under the procedures of Indiana Code Chapter 35–36–9, thus precluding imposition of the death penalty or life without parole).

### Conclusion

In sum, we hold that the two aggravating factors cited by the trial court as support for enhancing Jimmerson's sentence were improperly applied, but that the trial court's conclusion that Jimmerson is at risk for committing another crime may stand and that the nature and circumstances of this case are slightly aggravating. We reject Jimmerson's claims that "strong provocation" and his allegedly low

I.Q. should have been used as mitigators, which leaves his youth as the sole mitigator as found by the trial court. Because of our rejection of the trial court's stated aggravators, we choose to vacate the sentence and remand to the trial court to resentence Jimmerson and to issue a new sentencing statement that is consistent with this opinion.[4]

Sentence vacated and case remanded.

DARDEN, J., and NAJAM, J., concur.

4. On remand, the trial court may (1) issue a new sentencing order without taking any further action; (2) order additional briefing on the sentencing issue and then issue a new order without holding a new sentencing hearing; or (3) order a new sentencing hearing at which additional factual submissions are either allowed or disallowed and then issue a new order based on the presentations of the parties. *O'Connell v. State*, 742 N.E.2d 943, 952–53 (Ind.2001).