Jeffrey M. CLOUM, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 80A05–0201–CR–54.

Court of Appeals of Indiana.

Nov. 27, 2002.

Vance W. Curtis, Tipton IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Jeffrey Cloum appeals the fifty-year sentence imposed by the trial court for his voluntary manslaughter conviction. We remand for resentencing.

### Issues

We restate the issues we will address today as:

I. whether the trial court considered improper aggravating circumstances when imposing the sentence;

II. whether the trial court failed to consider significant mitigating circumstances; and

III. whether the trial court erroneously considered a victim impact statement that contained several allegations regarding Cloum's character.

### Facts

Because Cloum pled guilty, the following facts are derived from his testimony establishing the factual basis that he committed voluntary manslaughter, a Class A felony because it was committed by means of a deadly weapon. On January 11, 2001,

Cloum returned home from various appointments at around 4:00 p.m. and wanted to discuss pressing financial matters with his wife, M.C. She, however, announced that she was meeting friends in Kokomo and did not wait for Cloum to get ready to join her. Around 8:45 p.m., after Cloum had not heard from M.C. as he had expected, he drove to several taverns in Kokomo looking for her. After finding her, Cloum convinced M.C. to let him drive her home; he was concerned because M.C. had been drinking and already had two previous operating while intoxicated convictions. Additionally, M.C. had taken a prescription medication that amplified the intoxicating effect of the alcohol. After returning home at around 10:30 p.m., M.C. stated that she wanted to go out again, but Cloum did not want to leave their children home alone; an argument ensued. Four children lived at the residence, the oldest being Cloum's high school-age daughter. Cloum and M.C. checked on their children upstairs before returning downstairs and continuing to argue heatedly. M.C. grabbed a loaded handgun, which Cloum had a license to carry, cocked it, and began waving it at Cloum. She struck Cloum in the face with the barrel of the gun, leaving bruises and a cut across the bridge of his nose that was still visible in a photograph taken several months later. Cloum struggled to take possession of the gun. After he managed to do so, and while he and M.C. were continuing to argue, he shot M.C. in the head and killed her.

The State charged Cloum with murder, voluntary manslaughter, and reckless homicide. Cloum agreed to plead guilty to voluntary manslaughter, and the other two charges were dismissed. At sentencing, Cloum, who was thirty-eight years old,

presented uncontested evidence that he had never been convicted of a felony or misdemeanor and also that he had never been arrested. He also testified that there were no incidents of domestic violence during his relationship with M.C. Cloum also expressed remorse, testifying "I know it's my fault. Just plain and simple.... I know that and I take full responsibility for my actions that night." Tr. p. 121. The first officer on the scene confirmed that Cloum appeared to very emotionally upset at the time and was never uncooperative or combative. The jail officer where Cloum awaited trial and sentencing also testified that Cloum would become highly emotional when he discussed what he had done, and additionally that Cloum had caused no problems in the jail and even that he might have considered Cloum a friend under different circumstances. Cloum's brother-in-law also testified as to Cloum's general good nature and that he appeared to have a healthy relationship with M.C. An expert witness retained by Cloum's attorney indicated that he believed there was very little risk Cloum would commit another crime. By contrast, M.C.'s mother indicated her belief in her victim impact statement that Cloum was, in fact, dangerous, and had previously made various threats against M.C., their children, and an unrelated third party.

The trial court's written sentencing order indicates that it found three aggravating circumstances: (1) the crime was committed within the presence or hearing of persons less than eighteen years of age; (2) Cloum violated his duty to safeguard and protect M.C.; and (3) Cloum violated his moral and legal obligation to nurture and sustain his children.[1] It found only one mitigating circumstance, namely

1. The State contends the trial court found two additional aggravators: that Cloum was likely to commit another crime and the nature and circumstances of the crime. We do not discern that the trial court found any aggravators other than the ones we have listed here.

Cloum's lack of a criminal history. Finding that the aggravators outweighed the mitigators, it sentenced Cloum to the maximum possible sentence of fifty years. Cloum now appeals.

## Analysis

■ In general, sentencing determinations are within the trial court's discretion and are governed by Indiana Code Section 35–38–1–7.1. *McCann v. State*, 749 N.E.2d 1116, 1119 (Ind.2001). If a trial court relies on aggravating or mitigating circumstances to enhance or reduce the presumptive sentence, it must: (1) identify all significant mitigating and aggravating circumstances, (2) state the specific reason why each circumstance is determined to be mitigating or aggravating, and (3) articulate the court's evaluation and balancing of the identified circumstances. *Id.*

### I. Aggravating Circumstances

Cloum contends that all three of the trial court's stated aggravating circumstances upon which it relied were improper. We disagree with this argument, concluding these aggravators were proper under the facts of this case. Initially, we observe that although none of these aggravators are expressly recognized by statute, a trial court may consider other matters as aggravating or mitigating when determining a sentence. Ind.Code § 35–38–1–7.1(d); *Haggard v. State*, 771 N.E.2d 668, 675 (Ind.Ct.App.2002), *trans. denied.*

■ First, our supreme court has held that the commission of a crime in the presence of minor children may be considered an aggravating circumstance. *See Crawley v. State*, 677 N.E.2d 520, 522 (Ind.

1997). More specifically, a shooting may be considered to have been in the presence of children where they are able to hear the gunshot and see or discover the shooting victim shortly thereafter. *See id.* Here, it is undisputed that several minor children were upstairs in the house when the shooting took place downstairs.[2] Moreover, Cloum's eldest teenage daughter came downstairs immediately thereafter, carrying her infant half-sister. The trial court did not err in concluding that the fact that this crime occurred in the presence of several minor children merited some aggravating weight. Although Cloum attempts to distinguish *Crawley* on the basis that the defendant in that case committed murder and several other crimes while Cloum only pled guilty to voluntary manslaughter, we see nothing in the supreme court's opinion that limited proper use of this aggravator to the facts of that case.

■ Next, we consider whether the trial court erred in assigning aggravating weight to Cloum's violation of his duty "to safeguard and protect his mate." App. p. 9. We are unaware of any reported appellate decision addressing an aggravator stated in the language used by the trial court here. Nonetheless, our review of the case law indicates that although the language used by the trial court may be unique, our supreme court has approved the principle underlying this aggravator. The violation of a position of trust may constitute a valid aggravating circumstance. *See Walter v. State*, 727 N.E.2d 443, 448 (Ind.2000). The killing of one's spouse has been recognized as such a violation. *See id.* Although the trial court here did not explicitly mention the violation of a "position of trust," we decline to

---

2. There is disagreement between Cloum's and the State's briefs as to whether three or four children were present in the house. Cloum testified that there were a total of four children in the house: his two children from another marriage, M.C.'s own child, and Cloum's and M.C.'s child. *See* Tr. p. 89.

over-analyze the trial court's semantics. Instead, we conclude that, however stated, the trial court was concerned that Cloum violated a special relationship of trust he enjoyed with his wife when he killed her, which constitutes a valid aggravating circumstance.

■ Finally, we address whether the trial court erred in assigning aggravating weight to its finding that Cloum violated his obligation "to nurture, sustain and provide an atmosphere in which [his and M.C.'s] children can flourish." App. p. 9. Again, although the trial court's wording is different from any we have previously encountered, we believe precedent supports assigning some aggravating weight to the trial court's finding. Cloum directs us to *Bacher v. State,* 686 N.E.2d 791, 801 (Ind. 1997), for the proposition that "under normal circumstances the impact upon family is not an aggravating circumstance for purposes of sentencing." "The impact on others may qualify as an aggravator in certain cases but 'the defendant's actions must have had an impact on ... "other persons" of a destructive nature that is not normally associated with the commission of the offense in question and this impact must be foreseeable to the defendant.'" *Id.* (quoting *State v. Johnson,* 124 Wash.2d 57, 873 P.2d 514, 525 (1994)). Cloum essentially claims there was no indication in this case that the impact of this crime on his and M.C.'s children is of a destructive nature not normally associated with voluntary manslaughter and it was improper to aggravate his sentence based on a violation of his fatherly obligations.

We readily agree, pursuant to *Bacher,* that the impact of a crime on the victim and/or the victim's relatives has already been considered by the legislature in setting the presumptive term for a crime and is not a proper basis for enhancing a sentence absent evidence of an impact outside of the "norm" expected for a particular crime. We disagree, however, that there was no indication of such extraordinary circumstances in this case. As hinted at in the trial court's oral sentencing statement, this was not simply a homicide where an unknown stranger killed the children's mother and stepmother. Rather, the children's father killed her. We do not believe the trial court erred in recognizing that this fact has the potential for harming the children above and beyond the harm they may have suffered had M.C. been killed by someone else. By killing M.C., Cloum effectively deprived his children and stepchildren of two parents, not just one, with the children having to live with the knowledge that their father/stepfather killed their mother/stepmother. Regardless of how the trial court expressed its sentiments, it did not err in assigning some aggravating weight to this factor.

## II. Mitigating Circumstances

We acknowledge that trial courts are not obligated to explain why they did not find a factor to be significantly mitigating. *Sherwood v. State,* 749 N.E.2d 36, 38 (Ind.2001). "Indiana law, however, mandates that the trial judge not ignore facts in the record that would mitigate an offense, and a failure to find mitigating circumstances that are clearly supported by the record may imply that the trial court failed to properly consider them." *Id.* Cloum lists a number of proffered mitigating circumstances that he claims the trial court improperly failed to consider. We do not believe that every one of these factors is entitled to separate mitigating weight and believe that some of them are entitled to no weight at all. We are, however, sufficiently concerned that at least one significant mitigating circumstance was overlooked by the trial court such that a remand for resentencing is required.

First, we address Cloum's claimed mitigators that the trial court properly ignored. Cloum asserts he was entitled to mitigation because "the victim induced or facilitated the offense" and because he "acted under strong provocation." Appellant's Br. pp. 13–14. That may indeed be the case. We have previously held, however, that "it would contravene clear legislative intent to hold that a person convicted of voluntary manslaughter is entitled to double mitigation of his sentence, once by being convicted only of voluntary manslaughter instead of murder and again by use of the 'strong provocation' statutory mitigator." *Jimmerson v. State*, 751 N.E.2d 719, 725 (Ind.Ct.App.2001). Cloum's argument that M.C. "induced or facilitated the offense" is virtually identical to his "strong provocation" argument, and we conclude the trial court did not err in failing to mention these proposed mitigating circumstances.

Cloum also cites his alleged cooperation with police as a mitigating circumstance that the trial court improperly overlooked. It does appear that Cloum made no attempt to flee the scene of the crime, immediately reported the shooting, and was generally cooperative and non-combative with the police. Under some circumstances, this might have entitled Cloum to some mitigation of his sentence. *See Edgecomb v. State*, 673 N.E.2d 1185, 1199 (Ind.1996). In this case, however, we do not believe the trial court was compelled to consider or mention this alleged mitigating circumstance. Although Cloum immediately gave a statement to the police admitting that he shot M.C., he was less than forthcoming in that statement. In it, Cloum appeared to claim that the gun accidentally discharged while he and M.C. were struggling, while at the guilty plea hearing he admitted that he intentionally pulled the trigger after gaining possession of the gun. Thus, we conclude that this alleged mitigator is highly disputable in nature, weight, and significance, and the trial court did not err in failing to mention it. *See Smith v. State*, 670 N.E.2d 7, 8 (Ind.1996).

We now address Cloum's assertion that the trial court should have assigned some mitigating weight to his decision to plead guilty. Under the facts of this case, we agree. It is true, as the State argues, that "not every plea of guilty is a significant mitigating circumstance that must be credited by a trial court." *Trueblood v. State*, 715 N.E.2d 1242, 1257 (Ind.1999), *cert. denied*, 531 U.S. 858, 121 S.Ct. 143, 148 L.Ed.2d 94 (2000). First, "[w]here the State reaps a substantial benefit from the defendant's act of pleading guilty, the defendant deserves to have a substantial benefit returned." *Sensback v. State*, 720 N.E.2d 1160, 1164 (Ind.1999). The State claims here that it did not reap a substantial benefit from Cloum's plea because he only agreed to plead guilty to voluntary manslaughter, not the greater offense of murder of which he was also charged. This argument seems to pre-suppose that it would have been simple for the State to prove to a jury that Cloum committed murder instead of voluntary manslaughter. It does not appear from the available record, however, that it would have been so simple: there was evidence that M.C.'s killing occurred after a heated physical and verbal altercation with Cloum, perhaps partially fueled by M.C.'s consumption of alcohol and a medication that would have increased her intoxication, and during which M.C. struck Cloum in the face with a loaded firearm. Furthermore, the State does not acknowledge that Cloum was also charged with reckless homicide, a Class C felony. By pleading guilty to voluntary manslaughter, a Class A felony, Cloum acknowledged that he intentionally rather

than recklessly shot M.C., thus increasing his possible term of imprisonment from a term of two to eight years to twenty to fifty years. We conclude the State did reap a substantial benefit from Cloum's agreement to plead guilty to voluntary manslaughter, which conserved judicial resources and spared the victim's family from the trauma of a full-blown trial. *See id.*

Second, although a guilty plea does not by itself necessarily demonstrate remorse on the defendant's part, it can show an acceptance of responsibility for one's actions where it is at least partially confirmed by other mitigating evidence of the defendant's character. *Id.* at 1164–65 (citing *Scheckel v. State,* 655 N.E.2d 506, 511 (Ind.1995)). There was such evidence presented in this case. Cloum himself testified as to his remorse and full acceptance of responsibility for what he had done; it was not an equivocal expression of remorse of the type discounted, for example, in *Bonds v. State,* 721 N.E.2d 1238, 1243 (Ind.1999). That Cloum was remorseful for what he had done was confirmed by others: the first police officer at the scene confirmed that Cloum was "visibly upset" by what had happened, Tr. p. 32; the jail officer where Cloum awaited resolution of his case also confirmed that Cloum would become visibly upset and lose his composure when discussing what had happened; and a sentencing consultant hired by Cloum's counsel also confirmed that Cloum "broke down several times" when discussing the crime, Tr. p. 69. Also with regard to Cloum's character, the police officer and jail officer testified as to his general cooperativeness and unagressiveness, which was confirmed by psychological tests performed by the sentencing consultant.

Cloum also served for approximately six years in the United States military and was honorably discharged.

In this case, therefore, Cloum's guilty plea substantially benefited the State and he presented positive character evidence supporting the conclusion that the plea truly represented remorse and an acceptance of responsibility on his part. As such, we conclude the trial court abused its discretion in not assigning any mitigating weight to Cloum's decision to plead guilty. *See Scheckel,* 655 N.E.2d at 511. Furthermore, we are not confident that the trial court would have sentenced Cloum to the same, maximum term of imprisonment had this mitigating circumstance been recognized and balanced along with the other aggravating and mitigating circumstances. We thus remand for reconsideration of the appropriate sentence to be imposed upon Cloum.[3] On remand, the trial court may (1) issue a new sentencing order without taking any further action; (2) order additional briefing on the sentencing issue and then issue a new order without holding a new sentencing hearing; or (3) order a new sentencing hearing at which additional factual submissions are either allowed or disallowed and then issue a new order based on the presentations of the parties. *See O'Connell v. State,* 742 N.E.2d 943, 952–53 (Ind.2001).

Because we are remanding, we feel it necessary to address some other concerns with the trial court's oral and written sentencing statements. First, we emphasize that the maximum sentence for a crime should be reserved for the worst offenses or offenders. *See Buchanan v. State,* 767 N.E.2d 967, 973 (Ind.2002). "This refers generally to the class of offenses and offenders that warrant the maximum punish-

---

**3.** As we implied earlier, it is not clear to us that Cloum is entitled to *separate* mitigation based upon his expressions of remorse and evidence of his general good character, so long as that evidence is factored into the weight given to his decision to plead guilty.

ment." *Id.* We note that a lack of criminal history is generally recognized as a "substantial" mitigating factor. *See Loveless v. State,* 642 N.E.2d 974, 976 (Ind.1994). We also believe that a defendant's age is highly relevant in determining the weight to be given to a lack of criminal history. Although the sentence for a sixteen year-old without a criminal history may be entitled to substantial mitigation, as in *Loveless,* the sentence for a thirty-eight year-old without so much as a single arrest on his record should be entitled to even greater mitigation because he has avoided accumulating a criminal record for an additional twenty-two years.

We also share Cloum's concerns with some of the trial court's statements regarding the plea to voluntary manslaughter instead of murder, such as the following:

> The crime committed was a *murder* in sudden heat ... I must conclude that the extent to which Mr. Cloum was driven by sudden heat barely rises to that level. I must accept it because it's that crime to which the State has agreed and to which the family has allowed the State to agree. But it's hard for me to believe that this young mother and young wife drove him to the action that he finally took.

Tr. p. 192 (emphasis added). The trial court referred to the crime as "murder" on three other occasions, including "the cruel, unnecessary, heartless murder" of M.C. Tr. p. 194.

On several occasions, our supreme court has addressed a trial court's sentencing for voluntary manslaughter after stating its disagreement with or skepticism of the sufficiency of the evidence of sudden heat. In *Gambill v. State,* 436 N.E.2d 301, 305 (Ind.1982), the supreme court concluded that the trial court erroneously enhanced a sentence for voluntary manslaughter to compensate for what the trial court believed to be an erroneous verdict acquitting the defendant of murder. The trial court had stated that it believed the evidence justified a murder conviction and that voluntary manslaughter "was not the right verdict." *Id.* at 304. The supreme court remanded with instructions to sentence the defendant to the presumptive term for voluntary manslaughter. *Id.* at 305. Similarly, in *Hammons v. State,* 493 N.E.2d 1250 (Ind.1986), the defendant was acquitted of murder and convicted of voluntary manslaughter and the trial court again expressed its disagreement with the verdict. Although the trial court issued a particularized statement of the seriousness of the crime, it still stated three times that it disagreed with the verdict and assessed the crime in terms that described an act of murder. The supreme court again concluded that the trial court's enhancement of the voluntary manslaughter sentence was "suspect" and remanded for imposition of a presumptive term. *Id.* at 1253. By contrast, in *Wilson v. State,* 458 N.E.2d 654, 655 (Ind.1984), the trial court stated, "The finding that the jury made on sudden heat was an attribute to your lawyer. He is so good that that jury just couldn't find against him on those facts except voluntary manslaughter, and they gave you every benefit of every possible break they could look for and find." The supreme court held that this statement reflected a degree of skepticism by the trial court regarding the verdict, but was not a statement "so resolutely opposed to the jury verdict as was the case in *Gambill,*" and thus the resulting sentence for voluntary manslaughter was not suspect. *Id.* at 656.

Here, it appears to us that the trial court's statements at the sentencing hearing do not quite rise to the level of the statements in *Gambill* or *Hammons,* but yet express more doubt that Cloum was

being convicted of the "correct" crime than was the case in *Wilson.* As such, although we remand for resentencing by the trial court, we caution it not to sentence Cloum severely for the purpose of "compensating" for the fact that he is pleading guilty to voluntary manslaughter instead of murder. *See also Conwell v. State,* 542 N.E.2d 1024, 1025 (Ind.Ct.App.1989) (applying *Hammons* to guilty plea scenario and holding that when a defendant pleads guilty to an included offense, the element(s) distinguishing it from the greater offense may not be used as an aggravating circumstance to enhance the sentence. "The trial court is entitled to refuse to accept the plea to the included offense, but it may not attempt to sentence as if the defendant had pled to the greater offense by using the distinguishing element(s) as an aggravating factor.").

### III. Victim Impact Statement

Next, we address Cloum's argument regarding the victim impact statement in this case, which was made by M.C.'s mother. In it, she made a number of substantive factual allegations against Cloum that reflect poorly on his character, including: (1) he refused to try to find work; (2) she had previously witnessed Cloum's "irate and volatile behavior," Tr. p. 148; (3) that M.C. told her "she had never encountered anyone with a temper like Cloum or his paranoia," Tr. p. 149; (4) "Numerous people have told me that Cloum stated on more than one occasion that he was going to blow his wife's brains out," *Id.;* (5) that Cloum had threatened to kill all of his and M.C.'s children; (6) "Cloum patterned his life on preying upon others and controlling them," Tr. p. 150; (7) "Cloum disregarded laws and rules the normal people live by day to day," Tr. p. 155; (8) he threatened to kill a doctor who refused to falsify medical records for him, prompting the doctor to obtain a restraining order; (9) "His anger, threats, mannerisms of that night

were not isolated to that night as some would have you believe," Tr. p. 157; (10) "Cloum is an habitual liar and a con man," Tr. p. 158. Many assertions in the statement directly conflicted with testimony by Cloum and others, especially regarding his general good character, epitomized by his lack of any criminal or arrest record, and the lack of domestic conflict in his marriage. Additionally, M.C.'s mother was not under oath when she gave this statement and the State points to no corroborating evidence to support the factual allegations it contained, and we find none in the materials transmitted to this court. After M.C.'s mother completed her statement, the trial court denied Cloum's requests to completely disregard the statement, to examine M.C.'s mother, or to have Cloum retestify as a rebuttal to the claims made in the statement.

To the extent that many of the derogatory comments contained in the victim impact statement were based on hearsay, it is true that strict rules of evidence do not apply in sentencing proceedings, except with respect to privileges. *See* Ind. Evidence Rule 101(c)(2). "However, this is not to suggest hearsay is always proper." *Thomas v. State,* 562 N.E.2d 43, 48 (Ind.Ct.App.1990). "We must strike a balance between generally allowing hearsay information regarding defendant's life and insuring that a defendant is not sentenced on invalid information." *Id.* "In fact, reliance upon improper or inaccurate information in making the sentencing determination undermines the fairness of the sentencing process." *Id.* Furthermore, a defendant being sentenced must be given the opportunity to refute any information he claims is inaccurate. *See Letica v. State,* 569 N.E.2d 952, 958 (Ind.1991).

We are aware that victim impact statements are now an integral part of the

sentencing process, and in fact trial courts are required to receive and consider them. *See* I.C. § 35–38–1–7.1(a)(6). The purpose of the victim impact statement is to guarantee that the interests of the victim of a crime are fully and effectively represented at the sentencing hearing. *Loveless v. State*, 642 N.E.2d 974, 978 (Ind.1994). Additionally, the statement allows for a degree of catharsis by the victim or the victim's representative, permitting him or her to express their recommendation as to a sentence, the impact a crime had, and their feelings toward the defendant, all in a judicial setting. As such, we would not want to require victims or victim representatives to have to make their statement under oath with the ever-present threat of a perjury charge limiting their ability to speak freely; nor would it be wise, in our view, to subject a victim or victim's representative to defense cross-examination regarding comments made in a victim impact statement as a general rule. Nonetheless, when a victim impact statement strays from the effect that a crime had upon the victim and others and begins delving into substantive, unsworn, and otherwise unsupported allegations of other misconduct or poor character on the part of the defendant, caution should be used in assessing the weight to be given to such allegations, especially where the defendant is not provided an opportunity to respond directly to them.

Here, Cloum was not given the opportunity to respond to the victim impact statement of M.C.'s mother and the many allegations it contained, as he had requested. He should have been given the opportunity to do so. On the other hand, Cloum had already presented extensive evidence re-

garding his character and lack of criminal history, which might be viewed as a partial, pre-emptive rebuttal of the victim impact statement. Additionally, the trial court did not mention the victim impact statement when issuing its sentencing statement, leading us to believe that it did not assign much weight to the character allegations it contained.[4] On remand, however, the trial court should keep in mind our comments and observations.

## Conclusion

Although we conclude that the trial court did not consider any improper aggravating circumstances when sentencing Cloum, we do find that it overlooked a significant mitigating circumstance, namely Cloum's decision to plead guilty, where the State substantially benefited from the plea and Cloum presented evidence indicating that the plea represented remorse and an acceptance of responsibility. We remand for the trial court to resentence Cloum in a manner consistent with this opinion.

Remanded.

BAKER, J., and VAIDIK, J., concur.

---

4. We would be remiss, however, in not noting that the trial court "was unable to conclude that there is a low risk that [Cloum] would commit another crime." Tr. p. 192. All of the evidence presented by Cloum would seem to indicate the existence of a low risk that he would commit another crime, while the only material submitted to this court contradicting that evidence would appear to come from the victim impact statement.