**Ricky SMITH, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 82A01–0504–CR–169.**

Court of Appeals of Indiana.

Dec. 29, 2005.

Matthew Jon McGovern, Evansville, for Appellant.

Steve Carter, Attorney General of Indiana, Gary Damon Secrest, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Ricky Smith appeals his conviction for Stalking as a Class C Felony, arguing that the trial court erred in admitting the cell phone records of his victim. Alternatively, Smith argues that his sentence is inappropriate in light of the nature of the offense and character of the offender. Finding that the cell phone records were properly admitted and that the sentence is appropriate in this case, we affirm.

### Facts and Procedural History

Ricky Smith and A.B. were in a relationship for approximately four years. During much of this period, Smith lived with A.B. and her three children in her house in Evansville. In February 2004, A.B. terminated her relationship with Smith and instructed him to move out of her house. Smith did not wish to break up and indicated that he hoped to salvage the relationship. Later that month, however, A.B. filed a petition for a temporary protective order. At a hearing on March 29, 2004, the trial court issued a permanent protective order prohibiting Smith from "threatening to commit or committing acts of domestic or family violence, stalking, or a sex offense [against, or] ... harassing, annoying, telephoning, contacting, or directly or indirectly communicating" with A.B. Ex. 3. The order also directed Smith to "stay away from the residence, school, and/or place of employment" of A.B. *Id.*

Despite the protective order, Smith continued to contact A.B. by telephone and to violate those provisions of the order prohibiting his physical presence near A.B. A.B. became fearful of Smith and was afraid that he might harm her or her children. Acting on the advice of a police officer with whom she consulted, A.B. kept a log of Smith's phone calls and any other violations of the protective order. During the period from March 1 to June 2, 2004, A.B. documented sixty-nine phone calls from Smith to her cell, work, and home

phone numbers. In several phone calls Smith indicated that he was or had been near A.B.'s residence. Oftentimes, Smith would accuse A.B. of having new relationships or he would interrogate her about her daily activities. He frequently indicated to her that he was keeping track of her activities and that she could not hide from him. A.B. changed her home phone number once during this period and her cell phone number twice, but each time Smith managed to obtain the new numbers and persisted in calling A.B. Additionally, A.B. worked with the telephone operators at her place of employment to limit Smith's ability to reach her there, but with only limited success.

Smith also committed numerous other violations of the protective order involving physical contact with or stalking of A.B., including several instances where Smith drove by A.B.'s home, where he drove by the home of her friend, Carla Bradley, when A.B. was visiting, and where he drove next to or just behind A.B. or her friends when they were driving or walking along the street. Smith called Bradley at one point and directed her to inform A.B. that he "had somebody watching her and what she was doing. He knows everything she was doing, that he had his ways or his connections in getting information about her." Tr. p. 113. Additionally, A.B.'s son informed A.B. on one occasion that he saw Smith in the area while walking home from school and on another occasion that he saw Smith outside his window facing the street. While on a smoke break, A.B. and her co-worker, Jane Sutton, saw Smith drive by A.B.'s place of employment twice, waving at them the second time. Also, Smith was in a bar that A.B. visited with friends one evening, and he sat at her table and pleaded with her to discuss their relationship with him. A.B. reported many of these instances to the police and sought enforcement of the protective order, but Smith always left the area before the police arrived. He was eventually arrested on a warrant and charged with five counts of Invasion of Privacy[1] and one count of Stalking.[2]

A trial was held at which A.B. used the log she had kept to refresh her memory regarding the circumstances surrounding each of Smith's violations of the protective order. She testified in detail as to the date and time of each contact and read aloud the notes she had taken about what Smith said in each phone call. *Id.* at 19–51. In addition, the jury heard testimony from Bradley and Sutton regarding Smith's contacts with A.B., *id.* at 110–14, 123–25, as well as testimony from Martha Sutton, a telephone operator at A.B.'s workplace, confirming Smith's phone calls there. *Id.* at 127–29. A witness for Smith, Joseph Schlumpf, testified that Smith and A.B. phoned each other back and forth even after the protective order was issued. Further, the judge admitted A.B.'s cell phone records over Smith's objection that the State failed to lay a proper foundation for the records. *See* Exs. 5 & 6; Tr. p. 135–38. The jury found Smith guilty of Stalking as a Class C felony and Invasion of Privacy as a Class D felony.

At a separate sentencing proceeding, the trial judge merged Smith's conviction for invasion of privacy into his conviction for stalking.[3] The court found Smith's

1. Ind.Code § 35–46–1–15.1.

2. Ind.Code § 35–45–10–5.

3. We must address the trial court's merger of the two charges here, which we find to be improper. "Merging, without also vacating the conviction, is not sufficient. Our court has held that 'where a defendant is found guilty of both the greater offense and the lesser included offense, the trial court's proper procedure is to vacate the conviction for

prior criminal history as an aggravator and found no mitigators. Smith was sentenced to the maximum term of eight years. This appeal now ensues.

## Discussion and Decision

■ On appeal, Smith argues that the court improperly admitted A.B.'s cell phone records as evidence because, according to Smith, the State failed to lay an adequate foundation for those records. In addition, Smith argues that his eight-year sentence is inappropriate.[4] We address each issue in turn.

### I. The Trial Court Properly Admitted A.B.'s Cell Phone Records

■ Generally, the admission or exclusion of evidence is a determination entrusted to the discretion of the trial court.[5] *Carpenter v. State*, 786 N.E.2d 696, 702 (Ind.2003). We will reverse a trial court's decision only for an abuse of discretion, that is, when the trial court's decision is clearly erroneous and against the logic and effect of the facts and circumstances before the court. *Id.* at 702–03. Further, a claim that evidence was improperly admitted at trial will only prevail on appeal upon a showing that the error had an adverse effect on a substantial right of a party. *Id.* at 704. When there is substantial independent evidence of guilt such that it is unlikely that the erroneously admitted evidence played a role in the conviction, or where the offending evidence is merely cumulative of other properly admitted evidence, the substantial rights of the party have not been affected, and we deem the error harmless. *Boatright v. State*, 759 N.E.2d 1038, 1042 (Ind.2001); *Purvis v. State*, 829 N.E.2d 572, 585 (Ind.Ct.App. 2005), *trans. denied.*

Smith contends that the State failed to lay a proper foundation for A.B.'s cell phone records to be admitted as evidence. Specifically, Smith argues that the records were not properly authenticated under Indiana Evidence Rules 803(6), 901, and

the lesser included offense and enter a judgment of conviction and sentence only upon the greater offense." ' *Ratliff v. State*, 741 N.E.2d 424, 435 (Ind.Ct.App.2000) (citation omitted), *trans. denied. See also* Ind.Code § 35–38–1–6 (requiring that a conviction for a lesser-included offense be vacated). We therefore vacate Smith's conviction on Count II, Invasion of Privacy as a Class D Felony.

4. Although Smith does not challenge the admissibility of the cell phone records under a Crawford theory, we note that these records are not testimonial in nature, and they fall under the business records exception to the hearsay rule. Therefore, their admission does not violate the Confrontation Clause. *See Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 1367, 158 L.Ed.2d 177 (2004) ("Most of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements . . . .").

5. Here, the trial court's decision to admit A.B.'s cell phone records was based on a legal analysis, i.e., who meets the legal definition of a "custodian." Arguably, when a trial court's decision to admit or exclude evidence turns on a legal conclusion, we should review it *de novo* rather than for an abuse of discretion. *See Stahl v. State*, 686 N.E.2d 89, 91 (Ind. 1997) ("[T]he ultimate question in this case is the interpretation of the language of a rule of evidence that presents a question of law for this Court."); *cf. Evans v. State*, 727 N.E.2d 1072, 1081 (Ind.2000) (when reviewing a trial court's decision to give or reject a lesser-included offense jury instruction, we apply a *de novo* standard of review if the trial court's decision resulted from a legal analysis). However, the general practice of this Court and the Indiana Supreme Court is to review *all* admissibility determinations for an abuse of discretion. Therefore, until our Supreme Court directs us otherwise, we will continue to do so. We note that even if we were to review *de novo* the trial court's decision to admit A.B.'s cell phone records, our result would not change.

902(9). Indiana Evidence Rule 803(6) sets forth the hearsay exception for Records of Regularly Conducted Business Activity. It states:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all *as shown by the testimony or affidavit of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.*

(Emphasis added). Rule 901(a) covers the Requirement of Authentication or Identification of evidence, and it states:

> The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

Finally, Rule 902(9) permits the self-authentication of records of regularly conducted business within the scope of Rule 803(6) provided that:

> the custodian thereof or another qualified person certifies under oath [that the record] (i) was made at or near the time of the occurrence of the matters set forth, by or from information transmitted by, a person with knowledge of those matters; (ii) is kept in the course of the regularly conducted activity, and (iii) was made by the regularly conducted activity as a regular practice.

With these rules in mind, Smith argues that the State failed to lay a proper foundation for the admission of the cell phone records because the affidavits supporting their authenticity are not certified by a proper "custodian thereof or another qualified person." We disagree.

Two sets of cell phone records were admitted at trial; the first documenting all incoming calls to A.B.'s cell phone during the relevant time period, and the second documenting all incoming and outgoing calls. *See* Exs. 5 & 6. The parties agree that these records were submitted as evidence that (1) Smith made the alleged telephone calls to A.B.'s cell phone and (2) A.B. never attempted to call Smith from her cell phone. Both sets of phone records have attached affidavits completed by Angelique Dade and containing Ms. Dade's digital signature. The cover sheets of both affidavits state:

> Pursuant to 28 U.S.C. § 1746, I, the undersigned, do hereby declare:
>
> 1. My name is Angelique Dade
>
>     (Name of Declarant)
>
> 2. I am a United States citizen and over eighteen (18) years of age. *I am acting in behalf of the custodian of records of the business named in the subpoena, or I am otherwise qualified as a result of my position with the business named in the subpoena to make this declaration.*
>
> 3. I am in receipt of a Criminal Subpoena *served on Verizon Wireless* signed by Yvonne Carter, and requesting specified records of the business named below. Attached to this declaration are records responsive to the subpoena. Pursuant to Federal Rules of Evidence Rules 803(6) (Records of regularly conducted business activity) and 902(11) (Certified domestic records or regularly conducted activity), I hereby certify that the records attached to this declaration:

a) Were made at or near the time of the occurrence of the matters set forth in the records, by, or from information transmitted by, a person with knowledge of those matters;

b) Were kept in the course of a regularly conducted business activity; and

c) Were made by the regularly conducted activity as a regular practice.

I DECLARE under penalty of perjury that the foregoing is true and correct. (Emphases added). At the bottom of each affidavit is a section where a declarant provides certain information, including the name of the business she represents. For Exhibit 5, the business named is "fiducianet, inc.," and for Exhibit 6 it is "NeuStar, Inc."

■ Smith contends that the State failed to lay a proper foundation for these two affidavits because neither Dade's nor her employers' affiliation with Verizon Wireless is sufficiently clear as to indicate the trustworthiness of the information. In other words, Smith suggests that the affidavits fail to meet the custodial element of our rules of evidence. We find Smith's interpretation of the custodial element, however, to be improperly narrow. We have held that when considering who qualifies as "the custodian ... or another qualified person" under Rule 902(9), "the phrase 'other qualified witness' [sic] should be given the broadest interpretation" in order to encourage the admissibility of relevant and trustworthy evidence. *Williams v. Hittle*, 629 N.E.2d 944, 949 (Ind.Ct.App.1994) (employee of accounting firm hired by business to produce annual financial reports for the business is a custodian or other qualified person for purposes of Rule 902(9)), *reh'g denied, trans. denied.* The fact that a business record is created by an individual not an employee of the business subject to subpoena does not bar its admission as a record of that

business. *Id.* at 947. If it comports with the requirements of Rule 902(9), it is self-authenticating.

■ Here, the Dade affidavits indicate that Ms. Dade was aware that the subpoena was "served on Verizon Wireless." Exs. 5 & 6. When Dade completed the affidavits, she confirmed that "I am acting in behalf of the custodian of records of [Verizon], or I am otherwise qualified as a result of my position with the business named in the subpoena to make this declaration." *Id.* This declaration within the affidavit is sufficient to satisfy the custodial element of the rules of evidence absent a substantive challenge to the truth of the assertion; Smith made no such challenge, even admitting that he had no indication that the information was not trustworthy. Tr. p. 136. Further, Dade certified:

that the records attached to this declaration:

a) Were made at or near the time of the occurrence of the matters set forth in the records, by, or from information transmitted by, a person with knowledge of those matters;

b) Were kept in the course of a regularly conducted business activity; and

c) Were made by the regularly conducted activity as a regular practice.

Exs. 5 & 6. Finally, Dade signed the affidavits following the notation that "I DECLARE under penalty of perjury that the foregoing is true and correct." *Id.* In total, then, the affidavits fully complied with Rule 902(9), even tracking much of its language. Having met the requirements for self-authentication, the records were properly admitted by the trial court.

■ Having found the records properly admitted, we do note that even if they had been admitted in error, in this case that error would have been harmless. A.B. testified regarding her log entries, which

tracked each of the phone calls listed in the cell phone records in addition to Smith's calls to other numbers. A.B.'s friend, her co-worker, and the telephone operator at A.B.'s place of employment each testified that Smith had called A.B. or otherwise violated the protective order. Schlumpf, Smith's own witness, testified that Smith phoned A.B. and received A.B.'s calls in violation of the order. Given the volume of evidence against Smith in this case, the cell phone records may be regarded as simply cumulative of other evidence properly presented to the jury.

## II. Smith's Eight–Year Sentence is Appropriate

██ ██ Smith next contends that his eight-year sentence is inappropriate. Under Article VII, Section 6 of the Indiana Constitution, we have the constitutional authority to review and revise sentences where the sentence imposed is "inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). Our review under Appellate Rule 7(B) is very deferential to the trial court. *See Neale v. State,* 826 N.E.2d 635, 639 (Ind.2005). Although we must give "due consideration" to the trial court's sentence because of "the special expertise of the trial bench in making sentencing decisions," *Bennett v. State,* 787 N.E.2d 938, 949 (Ind.Ct.App.2003), *trans. denied,* Indiana Appellate Rule 7(B) is "an authorization to revise sentences when certain broad conditions are satisfied." *Neale,* 826 N.E.2d at 639.

██ The presumptive sentence for the class of crimes to which the offense belongs is meant to be the starting point for the court's consideration of what sentence is appropriate for the crime committed. *Martin v. State,* 784 N.E.2d 997, 1013 (Ind.

Ct.App.2003), *reh'g denied.* Here, Smith was convicted of a Class C felony. The presumptive sentence for a Class C felony is four years, with the maximum sentence being eight years and the minimum sentence being two years. Ind.Code § 35–50–2–6(a).[6] Hence, Smith's eight-year sentence is the maximum lawful sentence allowed for his conviction. Although maximum lawful sentences "have historically invited appellate review and, upon occasion, revision," *Martin,* 784 N.E.2d at 1013 (quoting *Hildebrandt v. State,* 770 N.E.2d 355, 360 (Ind.Ct.App.2002), *trans. denied* ), considering the nature of the offense and the character of the offender, this is not a case that calls for revision.

Reviewing first the nature of the offense, Smith argues that the facts of this case fail to support an enhanced sentence. He cites language from *Jimmerson v. State,* 751 N.E.2d 719, 724 (Ind.Ct.App. 2001):

[T]o enhance a sentence based on the particular individualized circumstances of the offense, there generally should be some indication that the manner in which the crime was committed was particularly egregious, beyond what the legislature contemplated when it prescribed the presumptive sentence for that offense.

We agree with Smith that a sentence is only properly enhanced upon some showing that the offense as committed was particularly egregious. However, we find that this burden is met with regard to Smith's crimes.

The record before us indicates that Smith's violations far exceeded that required for conviction under the statute. Indiana Code § 35–45–10–1 defines stalking as "a knowing or an intentional course

6. The Indiana sentencing statutes now provide for "advisory" rather than "presumptive" sentences, and Indiana Code § 35–50–2–6(a) has been amended to reflect this change.

of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." Smith argues that because his actions involved only repeated conduct, they go no further than the statute describes. Therefore, according to Smith, the trial court was bound by the presumptive four-year sentence established by the legislature.

However, Smith fails to appreciate the seriousness of his particular offense. The statute's "repeated" requirement can be met with only a small number of contacts, provided they are "repeated" contacts. Because Smith's contacts so clearly exceeded any minimal definition of the term "repeated" that we might be required to apply, we find it unnecessary to attempt to succinctly determine what constitutes a threshold finding of "repeated" contact. Smith phoned A.B. no less than sixty-nine times directly. There is evidence of other calls she did not receive or simply refused to take. Smith phoned A.B.'s friends on more than one occasion. When A.B. changed her home phone number once and her cell phone number twice, Smith each time endeavored to and successfully obtained her new numbers. He used language both with A.B. and her friend to indicate that he was watching A.B.'s every move and that she should not feel as though she had any privacy regarding Smith's surveillance. Smith parked outside A.B.'s home, drove past her place of employment, and even contacted her son when the boy was walking home from school. For a period of three months, Smith repeatedly harassed and terrorized A.B., utilizing numerous methods and forms of contact to achieve his objective despite a protective order against him. We cannot say that the trial court erred in

determining that Smith's offenses were so repeated and his conduct so egregious as to support a finding that Smith did more than the minimum necessary to invoke the stalking statute, and further that he did enough to warrant an enhanced sentence.

As to the character of the offender, Smith's criminal history alone, spanning twenty years, supports his eight-year sentence. Including the current offense of Stalking as a Class C felony, Smith has five felony convictions, including one for Battery as a Class C Felony and three stemming from an incident involving forgery and theft. Appellant's App. p. 108. He also has numerous misdemeanor convictions involving offenses ranging from public intoxication to check deception to trespass and, notably, one for Invasion of Privacy as a Class A Misdemeanor. *Id.* We cannot say that the trial court's imposition of the maximum sentence here was inappropriate and calls for revision.

Affirmed.

SULLIVAN, J., and FRIEDLANDER, J., concur.