Carla L. BECK, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 32A05–0210–CR–504.

Court of Appeals of Indiana.

June 23, 2003.

Paula M. Sauer, Danville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Carla L. Beck ("Beck") was found guilty of criminal recklessness,[1] as a Class A misdemeanor after a bench trial in Hendricks Superior Court. She was sentenced to 365 days in the Hendricks County Jail with 351 days suspended and credit for seven days served prior to trial. Beck was also sentenced to 365 days of probation. She appeals raising two issues, which we restate as:

    I.    Whether Beck's sentence of 365 days was inappropriate in light of the nature of the offense and the character of the offender; and,

---

1. Ind.Code § 35–42–2–2(b)(1)(1) (1998).

II. Whether the trial court erred when it sentenced Beck to a combined term of jail time and probation that exceeded one year.

Because we find that Beck's sentence of 365 days was not inappropriate but that the trial court erred when it sentenced her to a combined jail term and period of probation that exceeded one year, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

### Facts and Procedural History

On October 14, 2001, at approximately 2:00 p.m., Debra Gahimer ("Gahimer") was driving in the Wal Mart parking lot in Plainfield, Indiana. She drove to the end of a parking lane, and as she checked for traffic, she saw several pedestrians in the crosswalk and saw Beck's car traveling toward her about one and a half lanes away. Gahimer knew that Beck would have to slow for the pedestrians, so she proceeded to turn out of the parking lane. Instead of slowing, Beck's car sped up, and when Gahimer came up next to Beck, she told Beck to slow down. Tr. p. 17. The male passenger in Beck's car jumped out of the car, and he and Beck both yelled some profanities at Gahimer. Tr. pp. 18–19.

Gahimer then drove away and proceeded to leave the parking lot and drive to the Tractor Supply Company ("TSC"), which was nearby. To do so, Gahimer drove east, turned onto Perry Road, and headed toward U.S. 40. As she crossed U.S. 40, she saw Beck's car coming at her more quickly than it should have been. Gahimer entered the TSC parking lot and realized that Beck was chasing her. Beck's car was close enough to Gahimer that she was able to see Beck in the rearview mirror. Gahimer then dialed 911 on her cell phone.

When Gahimer began to pull into the TSC parking lot, Beck's car was not more than two car lengths behind her. Gahimer drove into the parking lot one way, while Beck drove in another way. Gahimer testified at trial that she thought that if she could get into the store, then Beck could not get to her, so she attempted to pull into a parking spot. Tr. p. 24. However, Beck was coming at her so fast that Gahimer thought that Beck was going to ram her. Tr. p. 25. Gahimer then began to leave the parking lot and drive toward U.S. 40. She was still on her cell phone with the 911 operator. Gahimer had to stop for a red light before turning onto U.S. 40. As she was stopped, Beck drove up behind her and stopped. The male passenger again began to exit the car and walk toward Gahimer's car. Traffic had cleared so Gahimer turned onto U.S. 40. The male passenger returned to the car, and Beck continued to chase Gahimer. The 911 operator told Gahimer that if she could get down to Cinergy, there were three officers waiting for her. Tr. p. 25.

As Gahimer drove, she attempted to stay even with the car next to her, so Beck could not get next to her and ram her. Gahimer stayed in the left lane, slowing down and speeding up to stay with the traffic. Beck was following Gahimer, swerving back and forth between lanes, and "running up" on Gahimer's car and the car next to her. Tr. p. 26. Beck's car came within two to three feet of Gahimer at times. Police stopped Beck and pulled her over near Cinergy.

On November 19, 2001, Beck was charged with criminal recklessness, as a Class A misdemeanor. A bench trial was held on September 20, 2002, and the trial court found Beck guilty. She was sentenced to 365 days in the Hendricks County Jail with 351 days suspended and credit for seven days actually served prior to

trial. Beck was placed on probation for a period of 365 days. Beck now appeals.

## I. Inappropriate Sentence

■ Sentencing decisions are entrusted to the sound discretion of the trial court and will be reversed only upon a showing of manifest abuse of that discretion. *Elisea v. State*, 777 N.E.2d 46, 50–51 (Ind.Ct. App.2002). This court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we] find[ ] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B); *see also Williams v. State*, 782 N.E.2d 1039, 1050 (Ind.Ct.App. 2003), *trans. denied.*

■ Beck argues that her maximum sentence of 365 days was inappropriate in light of the nature of the offense and the character of the offender. She claims this is because she had no prior criminal history and because this was a "relatively minor, short-lived, isolated altercation." Br. of Appellant at 5. Beck believes that the maximum sentence permitted by statute should be reserved for the very worst offenses and offenders. We agree, but hold that Beck's suspended sentence of 365 days is not the maximum sentence permitted by statute.

In the present case, Beck was found guilty of criminal recklessness, as a Class A misdemeanor and sentenced to 365 days in the Hendricks County Jail. The maximum sentence for a Class A misdemeanor is one year. Ind.Code § 35–50–3–2 (1998). Our supreme court has determined that "the maximum possible sentences are generally most appropriate for the worst offenders." *Buchanan v. State*, 767 N.E.2d 967, 973 (Ind.2002).

Before this incident, Beck had no prior criminal history. When this incident occurred, Beck was forty-five years old, a mother of two, and was working as a custodian at a church. This court has previously stated that leniency is encouraged toward defendants who have not previously been through the criminal justice system. *Biehl v. State*, 738 N.E.2d 337, 339 (Ind.Ct.App.2000), *trans. denied.* This mitigation is especially appropriate for a defendant like Beck, who was forty-five years old at the time of the crime and had lived a law-abiding life for many years. *See id.*

Beck was found guilty of criminal recklessness in the form of "road rage," an offense that should not be treated lightly. She did not have any prior criminal history, and therefore, while sentenced to the maximum sentence of 365 days, she did not receive the maximum punishment of an executed sentence. We believe Beck's suspended sentence was well within the court's discretion.

## II. Combined Jail Term and Probation

■ Beck also claims that the trial court erred when it sentenced her to a combined jail term and period of probation that exceeded 365 days. Under Indiana Code section 35–50–3–1, when a trial court suspends any part of a misdemeanor sentence, it may place the defendant on probation for a period of not more than one year. Ind.Code § 35–50–3–1(b) (1998 & Supp.2002). However, the combined term of imprisonment and probation cannot exceed one year. *Id.* Our supreme court had held "that a combined term of probation and imprisonment exceeding one year is inconsistent with the maximum term for conviction for a misdemeanor." *Smith v. State*, 621 N.E.2d 325, 326 (Ind.1993).

Here, Beck was found guilty of a Class A misdemeanor and sentenced to 365 days imprisonment with 351 days suspended and credit for seven days actually served prior to trial. The trial court also placed Beck on probation for 365 days. Because

the sentence imposed a term of probation that caused Beck to serve more than one year of combined imprisonment and probation, the trial court erred. We therefore remand this case to the trial court for a determination of the probation period, not to exceed 351 days.

### Conclusion

The trial court did not abuse its discretion when it sentenced Beck to a 365–day suspended sentence, but it erred when it sentenced her to a combined period of imprisonment and probation that exceeded one year.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

KIRSCH, J., concurs.

MATTINGLY–MAY, J., concurs with separate opinion.

MATTINGLY–MAY, Judge, concurring in result.

I concur in the result of this case, but write separately to address what I believe to be a misstatement in the majority opinion. The majority correctly notes Beck was sentenced to 365 days, or one year, which is the maximum sentence for a Class A misdemeanor. However, on page 5 of the opinion, the majority states "while sentenced to the maximum sentence of 365 days, [Beck] did not receive the *maximum punishment* of an executed sentence." (Emphasis supplied.) Presumably, the majority so holds because Beck's sentence was suspended and not ordered served while incarcerated.

I do not believe the novel concept of a "maximum punishment" separate and independent from a "maximum sentence" is helpful to or necessary for our analysis, and I believe such a concept is inconsistent with our prior decisions.

A 365–day sentence, whether suspended or served in the Department of Correction, is the "maximum sentence." A year is still a year, and a sentence is still a sentence. A suspended sentence is one actually imposed but the execution of which is thereafter suspended. *State v. Wright*, 202 N.W.2d 72, 77 (Iowa 1972). Such a sentence is "*a definite sentence* postponed so that the defendant is not required to serve his time in prison unless he commits another crime or violates some court-imposed condition[.]" *United States v. Gajdik*, 292 F.3d 555, 558 (7th Cir.2002) (emphasis supplied). In addressing whether a defendant was subjected to double jeopardy when he received double punishment for the same offense, our supreme court recognized that "even the entry of judgment and the imposition of a suspended sentence of imprisonment is additional punishment." *Thompson v. State*, 259 Ind. 587, 592, 290 N.E.2d 724, 727 (Ind.1972), *disapproved on other grounds in Elmore v. State*, 269 Ind. 532, 382 N.E.2d 893 (1978). Whether Beck's suspended sentence amounts to something less than "maximum punishment" does not change the fact she received the maximum sentence for a Class A misdemeanor.

I can find nothing in our case law that addresses, or even recognizes, a distinction between a maximum sentence with "maximum punishment" and a maximum sentence without "maximum punishment." Rather, those few decisions that have used the phrase "maximum punishment" appear to use it as a less-precise synonym for "maximum sentence." *See, e.g., Buchanan*, 767 N.E.2d at 973 ("Although maximum sentences are ordinarily appropriate for the worst offenders, we refer generally to the class of offenses and offenders that warrant the maximum punishment."); *Cloum v. State*, 779 N.E.2d 84, 90 (Ind.Ct. App.2002) (same), *citing Buchanan; Dowdell v. State*, 166 Ind.App. 395, 401, 336

N.E.2d 699, 702 (Ind.Ct.App.1975) (addressing amendment that "increased the maximum punishment for the crime of armed felony from twenty (20) years to thirty (30) years").

I concur, however, in the result the majority reaches because even though Beck had no prior criminal history, I agree that her manifestation of "road rage" "should not be treated lightly." Op. at 522.