**Angel PAGAN, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 88A01–0309–CR–330.**

Court of Appeals of Indiana.

June 11, 2004.

Transfer Denied Aug. 26, 2004.

Alison T. Frazier, Eckert Alcorn Goering & Sage, Madison, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Angel Pagan appeals his conviction and sentence for Class B felony robbery. We affirm in part and remand in part.

## Issues

We restate the issues before us as:

I. whether the State presented sufficient evidence to convict Pagan of robbery as charged in the information;

II. whether he is entitled to a new trial because of an unauthorized separation of the jurors during deliberations;

III. whether his trial counsel was ineffective; and

IV. whether his sentence is inappropriate.

## Facts

The facts most favorable to the judgment are that on October 3, 2002, Pagan entered Hardinsburg Video by himself, pointed a knife at Jody McIntyre, and demanded that she give him all of the money in the store's cash register and a moneybag under the counter. Hardinsburg Video appears to be a sole proprietorship owned and operated by McIntyre. After obtaining the money, Pagan ordered McIntyre to lie down in an adjoining room and, before leaving, threatened to kill her if she got up in the next two minutes. Pagan took none of McIntyre's personal property. Police apprehended Pagan and two companions, Angel Torres and James Thompson, shortly thereafter. Pagan then gave a recorded statement to police admitting to the crime, but claiming it was Torres' and Thompson's idea to commit the robbery.

The State charged Pagan with one count of robbery with a deadly weapon, a Class B felony. The information, as amended, specifically alleged that Pagan took property "from another person, to-wit: Hardinsburg Video, owned by Jody McIntyre ...." App. p. 29. After a jury trial on March 4 through 7, 2003, Pagan was found guilty as charged. Before sentencing, Pagan filed a motion alleging that at least two jurors committed misconduct by making cell phone calls during deliberations without the knowledge of the parties or court authorization. Nevertheless, the trial court proceeded to sentencing over Pagan's objection. It imposed a total sentence of twenty years, with four years suspended. Pagan now appeals.

## Analysis

### I. Sufficiency of the Evidence

■ Pagan argues that the State failed to prove the crime of robbery as alleged in the charging information.[1] In reviewing a claim of insufficient evidence, we will affirm the conviction unless, considering only the evidence and all reasonable inferences favorable to the judgment, and neither reweighing the evidence nor judging the credibility of the witnesses, we conclude that no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Bethel v. State*, 730 N.E.2d 1242, 1243 (Ind.2000).

In order to convict Pagan of robbery as a Class B felony, the State was required to prove he knowingly or intentionally took property from another person, or from the presence of another person, by using or threatening the use of force or by putting any person in fear, while armed with a deadly weapon. Ind.Code § 35–42–5–1. As Pagan points out, the State did not charge him with taking property "from the presence of another person," but from a

---

1. Pagan makes a separate argument that the information is defective because it fails to state a crime. He never moved to dismiss the information on this ground, however, and in any event, his separate sufficiency claim is merely a restatement of the defective information claim. We combine both issues and address them as a sufficiency claim.

person, namely "Hardinsburg Video, owned by Judy McIntyre...." App. p. 29.

Pagan specifically argues that the State failed to prove Hardinsburg Video is a "person" that could be robbed. Indiana Code Section 35–41–1–22(a) defines "person" for purposes of the Criminal Code as "a human being, corporation, limited liability company, partnership, unincorporated association, or governmental entity." Unfortunately, it is true that a sole proprietorship, as Hardinsburg Video apparently is, is not expressly listed as a possible "person" that can be the victim of a crime, while corporations, partnerships, limited liability companies, and unincorporated associations[2] are. *Cf. Washington v. Allison,* 593 N.E.2d 1273, 1275 (Ind.Ct.App. 1992) (holding sole proprietorship did not fall under Indiana Trial Rule 4.6(A) list of "organizations," which included corporations, partnerships, trusts, governmental organizations, and unincorporated associations).

We are satisfied, though, that a sole proprietorship may qualify as a "person" that can be the victim of a crime. Our supreme court clearly held that a sole proprietorship may be a crime victim, separate and distinct from the business owner, in *McKinley v. State,* 272 Ind. 689, 400 N.E.2d 1378 (1980). There, the defendant was charged with and convicted of two counts of robbery, once for taking the property of a sole proprietorship pharmacy, and again for taking the personal property of the pharmacy owner. On appeal, the defendant contended that he could only be convicted of one count of robbery related to the individual. Our supreme court rejected this claim, holding that the pharmacy was a "business establishment" and

that two separate crimes were committed when the defendant robbed "both that individual and that individual's business." *Id.* at 691, 400 N.E.2d at 1379. However, we acknowledge that the court was not asked to consider whether a sole proprietorship fell under the legal definition of "person" in the Criminal Code.

We note in the alternative that the definition of "sole proprietorship" is "[a] business in which one person owns all the assets, owes all the liabilities, and operates in his or her own personal capacity." Black's Law Dictionary 1398 (7th ed.1999). Under this definition, it is clear that stealing property from a sole proprietorship business is tantamount to stealing from the individual owner of the business, who necessarily owns all of the business' property. This is so even if, under *McKinley,* it is possible to be convicted of two separate counts of robbery if a defendant forcibly takes both clearly identifiable "business" property and "individual" property. Here, the only property Pagan took was clearly identifiable with the Hardinsburg Video business. As such, we conclude that although the State was only entitled to charge Pagan with one count of robbery, it could allege and prove the taking of property from the "person" of Hardinsburg Video, which property was also necessarily the property of Jody McIntyre, a human being. It is evident to us that it could not have been the intent of the legislature to impose criminal liability for robbing a corporation or other "officially" established business, or for robbing an individual person, but not for robbing an unincorporated business operated as a sole proprietorship. We find sufficient evidence that Hardinsburg Video was a "person" as alleged in

---

**2.** A sole proprietorship is not an "association," which is a word "used to indicate a collection of persons who have joined together to pursue a common enterprise." *Benevo-* *lent & Protective Order of Elks Local 291 v. Mooney,* 666 N.E.2d 970, 972 (Ind.Ct.App. 1996), *trans. denied.*

the charging information. *Cf. Smith v. State*, 664 N.E.2d 758, 760 (Ind.Ct.App. 1996), *trans. denied* (holding that estate was a "person" under Indiana Code Section 35–41–1–22 although estates are not expressly listed as such).

## II. Separation of Jurors

■ Pagan's second argument is that a separation of the jurors during their deliberations requires reversal of his conviction.[3] Specifically, he notes that the bailiff observed at least two jurors make outgoing calls on their cell phones while deliberations were taking place, apparently in order to inform family members that they would not be home for dinner. This did not come to the attention of the trial court or either party until after the judgment of conviction was entered, but before sentencing.

Indiana Jury Rule 29, effective January 1, 2003, provides:

(a) The court, in its discretion may permit the jury in civil cases to separate during deliberations. However, before the jurors are permitted to separate, the court shall instruct them that while they are separated, they shall:

(1) not discuss the case among themselves or with anyone else;

(2) not talk to the attorneys, parties, or witnesses;

(3) not express any opinion about the case; and

(4) not listen to or read any outside or media accounts of the trial.

(b) The court shall not permit the jury to separate during deliberation in criminal cases unless all parties consent to the separation and the instructions found in section "a" of this rule are given.

Pagan points out that the jurors in question did not seek court permission before making outside phone calls during deliberations,[4] and thus the jurors were not instructed in accordance with this rule nor was consent of the parties sought before the calls were made.

■■ It is true that as a general proposition, once a jury retires to deliberate, trial courts should strictly comply with the requirement that jurors remain together from the moment their deliberations begin until their verdict has been pronounced, unless there are exigent circumstances warranting separation. *Follrad v. State*, 428 N.E.2d 1201, 1203 (Ind.1981). Nevertheless, the State claims that the jurors' use of their cell phones during deliberations was not equivalent to a separation of the jurors, citing *Bryant v. State*, 246 Ind. 17, 202 N.E.2d 161 (1964). We disagree that *Bryant* supports such a broad proposition. In that case, a juror sought permission from the trial court during deliberations, albeit ex parte, to make a five or ten minute telephone call home to arrange for the caring of his livestock. Our supreme court condemned "any irregularities during the deliberations of the jury" and referred to the phone call as "the jury separation...." *Id.* at 21, 202 N.E.2d at 163–64. Thus, it is clear that a telephone call home during deliberations does

---

3. The State argues that Pagan waived this issue by not filing a formal motion to correct error with the trial court, which is required by Indiana Criminal Rule 16(A) to introduce evidence of alleged jury misconduct discovered within thirty days of final judgment. Although Pagan did not title his motion alleging jury misconduct a motion to correct error, it

clearly appears to have functioned as such and sufficed to allow the trial court to conduct an evidentiary hearing and rule on the matter. We will address the merits of Pagan's argument.

4. The bailiff apparently did inform the jurors that they could make the calls.

amount to a jury separation, notwithstanding the State's argument. Additionally, we observe that Indiana Code Section 35–37–2–6(a)(3) requires the bailiff in charge of the jury to "not permit any person to speak or communicate with them" once deliberations have begun. This statutory mandate was not followed here.

However, our supreme court in *Bryant* also held that the brief jury separation in that case did not warrant reversal of the defendant's conviction, where the separation

> did not concern or involve a matter connected with any issue in the case, but solely dealt with a juror's request to telephone about his personal affairs at home, which was entirely collateral and unrelated to the subject matter of the cause on trial and therefore could not have prejudiced appellant in any way ....

*Bryant,* 246 Ind. at 21, 202 N.E.2d at 164. We analyze this circumstance in two ways. In the first perspective, the line of cases concerning jury separations generally holds as follows: if there is a separation of significant length not required by exigent circumstances, reversal of a conviction is required and the separation is not subject to harmless error analysis. *See Follrad,* 428 N.E.2d at 1203 (addressing exigentless separation of seven and one half hours). Conversely, when there is only a brief separation, a defendant must demonstrate that a juror or jurors were exposed to a prejudicial influence or other irregular occurrence before reversal of a conviction is required. *See Stewart v. State,* 531 N.E.2d 1146, 1150 (Ind.1988) (addressing separation of five minutes).

With specific reference to jurors communicating with outside persons during deliberations, there is a rebuttable presumption of prejudice arising from such juror misconduct but only if there is proof, by a preponderance of the evidence, that an extra-judicial contact or communication occurred, and that it pertained to a matter pending before the jury. *Currin v. State,* 497 N.E.2d 1045, 1046 (Ind.1986). Also, "[a] defendant seeking a new trial because of juror misconduct must show that the misconduct (1) was gross and (2) probably harmed the defendant." *Griffin v. State,* 754 N.E.2d 899, 901 (Ind.2001). The trial court's determination on these points is reviewed for abuse of discretion, with the burden on the appellant to show that the misconduct meets the prerequisites for a new trial. *Id.*

Here, it is apparent that to the extent there was a separation of jurors caused by at least two jurors making cell phone calls to their homes, it was a brief separation and accordingly there is no automatic basis for reversal of Pagan's conviction, as established by *Stewart.* This case concerns alleged juror misconduct arising from jurors communicating with unauthorized persons during the course of deliberations. As such, we review the trial court's decision to refuse a new trial for an abuse of discretion. To warrant reversal, Pagan essentially must persuade us of four things: (1) extra-judicial communication occurred; (2) pertaining to a matter before the jury; (3) the misconduct was gross; and (4) it probably caused him prejudice. *See Currin,* 497 N.E.2d at 1046; *Griffin,* 754 N.E.2d at 901.

Pagan did establish, through the bailiff's post-trial testimony, that extra-judicial communication occurred during deliberations. However, he did not establish that the communications pertained to any matter being considered by the jury; as in *Bryant,* the phone calls were related to purely personal matters of the jurors, in this case the fact that they would not be home for dinner or other evening activities. Although it may have been, strictly

speaking, improper for the jurors to interrupt deliberations by making phone calls, especially without prior court knowledge or approval, such behavior was excusable under the circumstances and cannot be labeled "gross" misconduct. Finally, Pagan has failed to establish that this incident of separation caused him actual prejudice. Thus, we conclude the trial court did not abuse its discretion in refusing to set aside Pagan's conviction.

We should note, however, that Pagan's concerns about cell phone use during jury deliberations are not without merit. In this day and age, thanks to cell phones, most people now take it for granted that they can call or be called by anyone, anywhere, at any time. This expectation should not be carried into the jury room once deliberations have commenced, in accordance with the long-standing principle in Indiana of disfavoring the separation of jurors or having outside communications during deliberations.[5] We agree with Pagan that there is the potential for improper outside influence on a juror if that juror telephones a family member or business associate and informs them that the jury is still deliberating, and the family member or business associate then places implied or express pressure on the juror to hastily reach a verdict and return home or to work.[6] There is also the fact that cell phones could be used for more overtly mischievous purposes, such as seeking extraneous information relevant to the case, without court knowledge, especially since many cell phones also have Internet access capabilities. Incoming calls may disrupt the deliberative process of the jury or allow for the receipt of improper extraneous information. Courts should emphasize to jurors that they are not to have contact with outside persons once they have begun deliberations, and this includes cell phone communications. If jurors wish to separate for the purpose of making such calls, the dictates of Indiana Jury Rule 29 should be followed, which requires consent of the parties in criminal cases and an admonition to the jurors in all cases. Alternatively, if a juror wishes to make a phone call during deliberations for non-emergency personal reasons, a bailiff or other court official could make the call for the juror, as suggested by Justice Jackson in his separate concurrence in *Bryant*. 246 Ind. at 22, 202 N.E.2d at 164 (Jackson, J., concurring). However, in the present case we are convinced that reversal of Pagan's conviction is not required, given the nature of the communications and the lack of a showing of actual prejudice.

### III. Ineffective Assistance of Counsel

Pagan next argues that he received ineffective assistance of trial counsel.

A defendant claiming a violation of the right to effective assistance of counsel must establish the two components set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord Williams v. Taylor*, 529 U.S. 362, 390–91, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). First, the defendant must show that counsel's performance was deficient. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. This requires a showing that counsel's representation fell below an objective

---

**5.** The statute prohibiting outside communications with jurors during deliberations, now located at Indiana Code Section 35–37–2–6, was first enacted in 1905.

**6.** One juror in this case was apparently asked by his wife how much longer deliberations would take, which comes close to such implied pressure. Nevertheless, we do not believe this is sufficient by itself to warrant reversal of Pagan's conviction, especially since it appears the juror responded that he had no idea how much longer deliberations would take.

standard of reasonableness, *id.* at 688, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment, *id.* at 687, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Second, the defendant must show that the deficient performance prejudiced the defense. *Id.* To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. *Id.* at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. The *Strickland* Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. *Id.* at 689, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Bieghler v. State,* 690 N.E.2d 188, 199 (Ind.1997); *Davis v. State,* 598 N.E.2d 1041, 1051 (Ind.1992); *Ingram v. State,* 508 N.E.2d 805, 808 (Ind.1987). The two prongs of the *Strick-*

*land* test are separate and independent inquiries. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Williams v. State,* 706 N.E.2d 149, 154 (Ind.1999) (quoting *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052, 80 L.Ed.2d 674). *Timberlake v. State,* 753 N.E.2d 591, 603 (Ind.2001), *cert. denied,* 537 U.S. 839, 123 S.Ct. 162, 154 L.Ed.2d 61 (2002).

 Pagan's first claim of ineffectiveness is that his trial counsel should have moved to suppress his statement to police, claiming it was involuntarily given. To prevail on this claim, Pagan must be able to show a reasonable probability that challenging the admissibility of his confession on voluntariness grounds would have led to its exclusion and his acquittal; otherwise, he cannot establish that he was prejudiced. *White v. State,* 699 N.E.2d 630, 633 (Ind.1998). If a defendant challenges the admissibility of his confession on voluntariness grounds under the United States Constitution, as Pagan has apparently done, the State must prove by a preponderance of the evidence that the confession was voluntarily given.[7] *Id.* "In determining whether a confession was voluntarily given, a court considers the totality of the circumstances surrounding the confession." *Id.* A confession must be the product of a rational intellect and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will. *Brabandt v. State,* 797 N.E.2d 855, 863 (Ind.Ct.App.2003). "The critical inquiry is whether the defendant's statements were induced by violence, threats, promises, or other improper influence." *Id.*

---

**7.** Under the Indiana Constitution, the State must prove voluntariness beyond a reasonable doubt. *See Jackson v. State,* 735 N.E.2d 1146, 1153 (Ind.2000). Pagan cites the federal preponderance standard in his brief.

During trial, Pagan testified that before police turned the tape recorder on to record his statement, they demanded that Pagan "tell them something and they will do everything they can for me not to spend a day in jail, to give them a statement, yelling and saying fowl [sic] language to tell them something." Tr. p. 248. By contrast, the State introduced into evidence the waiver of rights form Pagan signed before giving his statement, which says that he understood his rights, waived them, and that "[n]o promises or threats have been made to me and no pressure or coercion of any kind has been used against me." Ex. 22. At the beginning of the taped statement, the police confirmed that Pagan had read, been read, understood, and signed the waiver form. Pagan also agreed with the police that "[n]o one has threatened you or, uh, made you talk to us or anything like that," and that he was giving the statement "of his on [sic] free will . . . ." Tr. pp. 106–07. Although Pagan was only eighteen at the time, he had had several previous encounters with law enforcement and was not naïve in this respect.

In light of this conflicting evidence on the voluntariness of Pagan's confession, we cannot say trial counsel was ineffective for not moving to suppress it. This conflict in the evidence made it doubtful that the trial court would have granted such a motion; the trial court has the responsibility to make a factual determination and weigh evidence regarding the voluntariness of a confession. See Luckhart v. State, 736 N.E.2d 227, 230 (Ind.2000). There was no guarantee that the weighing would have come out in Pagan's favor in this case. Trial counsel may reasonably have decided that the better course of action would be to attack the credibility of the statement, but not its admissibility, by claiming it was produced not only by police pressure, but also pressure from Torres and Thompson

to "take the rap" for the robbery. See Morgan v. State, 648 N.E.2d 1164, 1169–70 (Ind.Ct.App.1995), adopted in relevant part, 675 N.E.2d 1067, 1072 (Ind.1996) (noting that trial court makes admissibility determination based on voluntariness of confession, but jury separately assesses credibility of confession also by considering voluntariness). We conclude that trial counsel's decision not to challenge the admissibility of Pagan's statement to police falls within the range of reasonable strategic decisions and does not amount to ineffectiveness.

■ Pagan also claims trial counsel was ineffective for not objecting to the prosecutor's questioning of him about a "Pimp" tattoo on one of his hands. Specifically, the following exchange took place:

Q: . . . What's the tattoo on your left hand?

A: A tattoo that says pimp.

Q: What?

A: It says pimp.

Q: Is that what you are?

A: When I was younger I use to have a couple of girl friends and so I considered myself like that.

Q: You considered yourself a pimp?

A: Yes.

Q: So you had it tattooed on your hand?

A: Yes.

Q: You pimped out the mother of your child?

A: No.

Q: Is that the deal?

A: No.

Q: What are you talking about?

A: When I was younger.

Q: When you were younger?

A: When I was a teenager, probably fourteen, fifteen when I got this.

Q: You were pimping people out when you were fourteen or fifteen, is that what you are telling this jury?

A: It's, uh, I guess, it's a thing that every boy does when they are young they like to have a bunch of girl friends and they think they are a stud which I thought I was, yes, so I had it tattooed on my hand.

Tr. pp. 296–97.

Pagan contends that this line of questioning violated Indiana Evidence Rule 404(b), which prohibits the introduction of "[e]vidence of other crimes, wrongs, or acts ... to prove the character of a person in order to show action in conformity therewith." Such evidence may be used "as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident ...." Ind. Evidence Rule 404(b). "This rule prevents the State from punishing people for their character, and 'evidence of extrinsic offenses poses the danger that the jury will convict the defendant because his "general character" is bad or ... he has a tendency to commit other crimes.'" *Bassett v. State,* 795 N.E.2d 1050, 1053 (Ind.2003) (quoting *Gibbs v. State,* 538 N.E.2d 937, 939 (Ind. 1989)). The State contends that the tattoo did not "raise any inference of criminal activity." Appellee's Br. p. 14. We cannot accept that argument, especially given that the State not only pointed out Pagan's tattoo, but clearly tried to raise the inference of criminal or distasteful conduct on Pagan's part, such as "pimp[ing] out the mother of your child...." Tr. p. 296. Such questions had absolutely no relevance to this case and we see no purpose for them other than to portray Pagan in a negative light. Although the fact that Pagan had a tattoo on one hand was relevant to the victim's identification of the robber,[8]

the State's repeated questioning on the meaning of the tattoo was completely irrelevant and potentially prejudicial. As such, we do agree that if an objection had been made to these questions, the trial court would have been required to sustain it. *See Oldham v. State,* 779 N.E.2d 1162, 1171–73 (Ind.Ct.App.2002), *trans. denied* (2003) (finding admission of novelty business cards identifying defendant as "Rob Goddie" and novelty "Wanted" photograph of defendant was fundamental error).

■ We do not believe Pagan was prejudiced by trial counsel's failure to object to the extent that he received ineffective assistance of counsel. The questionable exchange between the prosecutor and Pagan takes up only a few lines of a three hundred page transcript. The State did not later mention the "Pimp" tattoo in further questioning or in closing arguments. Pagan responded to the State's accusations of improper conduct by indicating that the word "Pimp" referred to his having multiple girlfriends and was not indicative of any illegal or immoral conduct. The evidence against Pagan was considerable. Although McIntyre could not positively identify him as the robber because his face had been covered by a bandana, when police apprehended him he was sitting alone in the back seat of a vehicle, without a shirt on, where the bandana, knife, and a sweatshirt matching one worn by the robber were found. Thompson and Torres were in the front of the car. Pagan also confessed to police and accurately told them where the moneybag from the video store was dumped. Under the circumstances, we do not see a reasonable probability that the outcome of Pagan's trial would have differed if trial counsel had objected to the State's ques-

---

8. McIntyre stated that the robber used his right hand to wield the knife and that she did not see any tattoos; Pagan's tattoo is on his left hand.

tions regarding the "Pimp" tattoo. Pagan did not receive ineffective assistance of trial counsel.

## IV. Sentence

 Pagan's final argument is that his twenty-year sentence, the maximum for a Class B felony, is inappropriate. Article 7, Section 6 of the Indiana Constitution authorizes independent appellate review and revision of a sentence imposed by the trial court. *Williams v. State*, 782 N.E.2d 1039, 1050 (Ind.Ct.App.2003), *trans. denied.* This authority is implemented through Indiana Appellate Rule 7(B), which provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Id.* "Sentences at the extremes of the lawful range are more often (but not always) clearly, plainly, and obviously inappropriate." *Id.* In particular, maximum sentences such as the one in this case[9] should generally be reserved for the worst class of offenses and offenders. *Buchanan v. State*, 767 N.E.2d 967, 973 (Ind.2002).

The "nature of the offense" under Appellate Rule 7(B) speaks to the statutory presumptive sentence for the class of crimes to which the offense belongs. *Williams*, 782 N.E.2d at 1051. "The classifications of crimes and their presumptive sentences, enhancements, and reductions have been determined by the General Assembly as a matter of public policy." *Id.* The presumptive sentence is a court's starting point for consideration of the appropriate sentence for the particular crime

committed. *Id.* The presumptive sentence for a Class B felony is ten years. I.C. § 35–50–2–5.

 The "character of the offender" as used in Appellate Rule 7(B) refers to the general sentencing considerations under Indiana Code Section 35–38–1–7.1(a) and the balancing of aggravating and mitigating circumstances under Indiana Code Section 35–38–1–7.1(b) and (c), as well as the other factors left to the trial court's discretion under Section 35–38–1–7.1(d). *Williams*, 782 N.E.2d at 1051. "The trial court is not limited to considering only the factors and circumstances contained within the statute, but may also consider other aggravating and mitigating circumstances in determining the sentence." *Id.*

 We begin by acknowledging the State's argument that the nature of this offense warrants aggravation of Pagan's sentence. It notes that Pagan robbed a video store by using a knife, holding it near McIntyre's throat, and threatening her; that Pagan ordered her to lie down in an adjoining room before he left; that he took money from the store and attempted to take money from McIntyre; and that McIntyre was frightened. The State concludes: "Although no one was hurt, this was still an armed robbery involving a deadly weapon; a crime of violence." Appellee's Br. p. 17. We agree with Pagan that this argument only amounts to restating the elements of armed robbery as a Class B felony: taking someone's property by using force or the threat of force while armed with a deadly weapon. I.C. 35–42–5–1. It is clear that

---

9. This court has clarified that we will consider suspended portions of a sentence as well as executed portions when considering the appropriateness of a sentence. *See Cox v. State*, 792 N.E.2d 898, 904 n. 6 (Ind.Ct.App.2003), *trans. denied.* "A year is still a year, and a sentence is still a sentence." *Beck v. State*, 790 N.E.2d 520, 523 (Ind.Ct.App.2003) (Mattingly–May, J., concurring). Thus, although four years of Pagan's twenty-year sentence was suspended, we still view it as a maximum sentence.

courts may not use factors constituting material elements of an offense as an aggravating circumstance. *Spears v. State,* 735 N.E.2d 1161, 1167 (Ind.2000). "[T]o enhance a sentence based on the particular individualized circumstances of the offense, there generally should be some indication that the manner in which the crime was committed was particularly egregious, beyond what the legislature contemplated when it prescribed the presumptive sentence for that offense." *Jimmerson v. State,* 751 N.E.2d 719, 724 (Ind.Ct.App. 2001). There has been no such showing in this case. Although we acknowledge that McIntyre was undoubtedly frightened by Pagan's conduct, we presume the legislature considered that victims of armed robberies would normally be frightened when it determined that the presumptive sentence for such a crime should be ten years. *See Pickens v. State,* 767 N.E.2d 530, 535 (Ind.2002) (noting that victim impact is an aggravating circumstance only if it is demonstrated that crime had destructive impact not normally associated with the offense).

■ The State directs us to several other factors the trial court noted that it contends warrant aggravation of Pagan's sentence. First, the trial court observed that McIntyre requested aggravation of Pagan's sentence. However, "although recommendations by a victim's family may be used by the court to assist it in making a sentencing decision, the recommendations 'are not mitigating or aggravating circumstances as those terms are used in the sentencing statute.'" *Hawkins v. State,* 748 N.E.2d 362, 363 (Ind.2001) (quoting *Edgecomb v. State,* 673 N.E.2d 1185, 1199 (Ind.1996)). Reliance on such a recommendation as an aggravating circumstance is improper. *Id.* Second, the trial court stated that "imposition of reduced sentence or suspension of the sentence would depreciate the seriousness of the crime." Sentencing Tr. p. 5. This aggravator is appropriate only when the trial court is considering a reduced sentence. *Hawkins,* 748 N.E.2d at 363. There is no indication in the record that the trial court was considering a reduced sentence in this case; in fact, the judge expressly stated that he was "a little bit reluctant to reduce your sentence any from the maximum actually." Sentencing Tr. p. 7. Thus, this aggravator is inappropriate here.

■ The trial court also stated "that you would be best provided correctional rehabilitative treatment by commitment." *Id.* at 5. In order to support aggravating a sentence on the basis that the defendant is in need of rehabilitative treatment best provided in a correctional facility, a court needs to explain why the defendant requires treatment beyond the presumptive sentence. *Bailey v. State,* 763 N.E.2d 998, 1004 (Ind.2002). Here, the trial court did state that Pagan had failed at alternative rehabilitative treatments, "including short term detention probation without success." Sentencing Tr. p. 5. This observation does justify a period of incarceration for Pagan as opposed to alternative correctional treatment; however, it does not explain the need for incarceration beyond the ten-year presumptive sentence for Class B felonies, especially where it does not appear the trial court was inclined to consider allowing Pagan to serve most of his sentence on probation or in an alternative correctional facility. *See Beason v. State,* 690 N.E.2d 277, 281–82 (Ind.1998) (holding trial court's statements that defendant had previously violated probation and court restraining orders did not support use of correctional facility rehabilitative treatment aggravator where there was no possibility the defendant was not going to be committed to a penal facility); *compare Bailey,* 763 N.E.2d at 1004 (holding correctional facility rehabilitative treatment aggravator was proper where trial court expressly indicated that presumptive sen-

tence would not suffice because of defendant's mental and psychological history).

We do agree that the fact Pagan committed the current crime while on probation for an earlier offense is a proper aggravating circumstance. *See Price v. State,* 725 N.E.2d 82, 85 (Ind.2000). Pagan also does have a limited juvenile delinquency/criminal history, which again warrants some aggravation. *See, e.g., Hawkins,* 748 N.E.2d at 364. Not counting two runaway incidents, in 2000 Pagan was adjudicated delinquent for possession of cocaine and marijuana, and in 2002 was found guilty in adult court of possession of stolen property.

In contrast to these two valid aggravating circumstances, Pagan notes that the trial court expressly found the fact that he has a two-year-old child to be a mitigating circumstance. He also requests that we consider his relative youth, eighteen at the time of the offense, and the non-violent nature of his delinquency/criminal history as indicators that he is not deserving of a maximum sentence. After careful consideration and review of similar cases, we agree that Pagan's maximum twenty-year sentence is inappropriate. Our supreme court has held that a defendant's youth can be a significant mitigating circumstance when considering the "character of the offender" under Appellate Rule 7(B). *See Brown v. State,* 720 N.E.2d 1157, 1159 (Ind.1999) (addressing whether sentence was "manifestly unreasonable" under prior version of Appellate Rule 7(B)).

In *Redmon v. State,* 734 N.E.2d 1088, 1095 (Ind.Ct.App.2000), we held that a fifteen-year-old defendant's maximum twenty-year sentence for Class B felony burglary was "manifestly unreasonable," despite the defendant's "extensive juvenile criminal history, and his failure to respond to previous rehabilitative measures ...." Similarly, our supreme court held in *Hill v. State,* 499 N.E.2d 1103, 1109–10 (Ind.

1986), that an eighteen-year-old defendant's maximum fifty-year sentence for Class A felony robbery was "manifestly unreasonable," again despite an extensive though non-violent juvenile history and previous failures to respond to probation. In light of these cases, which appear to be nearly on all fours with this one and found maximum sentences to be "manifestly unreasonable," we cannot say that Pagan's twenty-year maximum sentence is "appropriate" in light of the nature of the offense and Pagan's character under the current version of Appellate Rule 7(B). Neither this offense nor this offender appear to fall into the "worst" class. However, we do believe that Pagan's committing this offense while on probation and his limited juvenile and criminal history do warrant an enhanced sentence. Therefore, we remand with directions to modify Pagan's sentence to a total term of fifteen years, leaving in place the four-year suspended portion of the sentence.

### Conclusion

The State presented sufficient evidence Pagan robbed a "person" as required to support his conviction for robbery. Although it was improper for jurors to make cell phone calls during their deliberations, especially without prior court knowledge or approval, we see no indication that this conduct prejudiced Pagan. Additionally, Pagan received effective assistance of trial counsel. Therefore, we affirm Pagan's conviction. However, we remand with instructions to modify Pagan's sentence to a total term of fifteen years, with four suspended.

Affirmed and remanded with instructions.

CRONE, J., and BAKER, J., concur.