**Joey JENNINGS, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 53A01–1010–CR–541.

Court of Appeals of Indiana.

Oct. 27, 2011.

Jeremy M. Noel, Monroe County Public Defender, Bloomington, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

MATHIAS, Judge.

Joey Jennings ("Jennings") was convicted of Class B misdemeanor criminal mischief and sentenced to 180 days in jail, with 150 days suspended and 360 days of probation. Jennings appeals and raises two issues, which we restate as:

I. Whether the State presented sufficient evidence to support Jennings's conviction; and

II. Whether Jennings's sentence is contrary to statute.

We affirm in part, reverse in part, and remand with instructions.

## Facts and Procedural History

On the evening of May 26, 2009, Jennings's girlfriend, Leticia Terrell ("Terrell"), and Cody Pope ("Pope") were visiting Caroline and Sam Martin ("the Martins") at the Martins' residence. At approximately 11:00 p.m., as Terrell was preparing to leave, the occupants of the house heard Jennings's vehicle, which had muffler damage and made a distinctive sound, driving toward the house. While Ms. Martin was walking Terrell to her car, Jennings parked his vehicle nearby, got out, and approached Terrell. When Terrell and Jennings began talking, Ms. Martin went back inside the house and closed the door. Pope stayed inside the house during the exchange because Jennings had previously threatened Pope's life for "messing with" Terrell, and Pope "didn't want any problems." Tr. pp. 64, 65.

Shortly after Ms. Martin re-entered the house, she and Pope both heard a loud noise coming from outside. Pope described the sound as "a pssshh sound, like a trailer brake or something." *Id.* at 66. Ms. Martin likened the sound to "a semi[']s air brakes going off." *Id.* at 82. A few seconds later, Pope heard "screeching tires" and the distinctive muffler sound of Jennings's car as it sped away. *Id.* at 66. Terrell left immediately thereafter.

About an hour later, after Pope and the Martins finished watching a movie, Pope decided to leave. Pope got into his truck and started to back up when he realized he had a flat tire. When he got out to investigate, Pope discovered a gash in his tire and three large scratches down the side of the truck. Pope then told the Martins that his truck had been vandalized, and they called the police.

On June 19, 2009, the State charged Jennings with Class A misdemeanor criminal mischief for damaging Pope's truck.

Jennings's jury trial commenced on July 22, 2010, during which the State orally amended the charge to Class B misdemeanor criminal mischief. At the conclusion of the evidence, Jennings was found guilty as charged. The trial court sentenced Jennings to 180 days, with thirty days executed and 150 days suspended. The court further sentenced Jennings to 360 days of probation. Jennings now appeals.

## I. Sufficient Evidence

Jennings argues that the State presented insufficient evidence to support his conviction for Class B misdemeanor criminal mischief. In reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Atteberry v. State,* 911 N.E.2d 601, 609 (Ind.Ct.App.2009). Instead, we consider only the evidence supporting the conviction and the reasonable inferences to be drawn therefrom. *Id.* If there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, then the verdict will not be disturbed. *Baumgartner v. State,* 891 N.E.2d 1131, 1137 (Ind.Ct. App.2008). Circumstantial evidence alone is sufficient to sustain a conviction. *Green v. State,* 808 N.E.2d 137, 138 (Ind.Ct.App. 2004).

In order to convict Jennings of Class B misdemeanor criminal mischief, the State was required to prove that Jennings "recklessly, knowingly, or intentionally damage[d] or deface[d]" Pope's truck without Pope's consent. *See* Ind.Code § 35–43–1–2(a) (2004). Jennings contends that the State presented insufficient evidence to prove that he was the person who damaged Pope's truck. We disagree.

Both Pope and Ms. Martin testified at trial that they heard a loud noise coming from outside the house while Terrell and Jennings stood outside, near Pope's truck. Pope described the sound as "a pssshh sound, like a trailer brake or something[,]" and Ms. Martin likened the sound to "a semi[']s air brakes going off." Tr. pp. 66, 82. It was reasonable for the jury to infer that the noise Pope and Ms. Martin heard was the sound of air escaping from Pope's slashed tire, especially in light of the testimony that Jennings immediately sped away with "screeching tires." *Id.* at 66. Further, the testimony concerning Jennings's animosity toward Pope, combined with the lack of any evidence supporting a conclusion that Terrell bore any ill will toward Pope, supports an inference that Jennings, not Terrell, was the perpetrator.[1] Indeed, the evidence that Pope and Terrell had been socializing at the Martins' residence and watching a movie together supports an inference that the two were on friendly terms. This evidence, though circumstantial, was sufficient to support Jennings's conviction for Class B misdemeanor criminal mischief.

## II. Sentencing

■ Jennings also claims that the trial court erred by sentencing him in excess of the statutory maximum sentence. Jennings committed Class B misdemeanor criminal mischief, for which the maximum sentence is 180 days. *See* Ind.Code § 35-50-3-3 (2004). But when a court suspends any portion of a misdemeanor sentence, "it may place the person on probation ... for a fixed period of not more than one (1) year, notwithstanding the maximum term of imprisonment for the misdemeanor.... However, the combined term of imprisonment and probation for a misdemeanor may not exceed one (1) year." Ind.Code § 35-50-3-1(b) (2004).

Here, Jennings received the maximum 180-day sentence, with thirty days executed and 150 days suspended, and 360 days of probation.[2] Jennings cites *Collins v. State,* 835 N.E.2d 1010, 1018 (Ind.Ct.App. 2005), *trans. denied,* for the proposition that his "term of imprisonment" for the purposes of Indiana Code section 35-50-3-1(b) includes both the executed and suspended portions of his sentence. According to Jennings, because he received a 180-day term of imprisonment, the trial court violated the statute when it sentenced him to an additional 360 days of probation. Thus, our resolution of this issue turns on our interpretation of the statutory phrase "term of imprisonment."

In some cases, this court has concluded that a defendant's term of imprisonment

---

1. *Zinn v. State,* 424 N.E.2d 1058 (Ind.Ct.App. 1981), the principal case on which Jennings relies, is readily distinguishable from the case at hand. In *Zinn,* this court concluded that the evidence was insufficient to support a conviction for telephone harassment because the evidence presented "proved merely that the call or calls in question originated from a telephone number assigned to Mrs. Zinn without other evidence showing either that she had sole access to the use of that line or that she had some reason or motivation for making the telephone calls[.]" *Id.* at 1061-62. But here, the evidence establishes that Jennings *did* have a motivation for committing the crime, i.e. his jealousy over Pope's alleged romantic involvement with Terrell.

2. It appears that the 360-day term of probation was intended to include the 150-day suspended portion of Jennings's sentence. But it is unclear whether the term of probation was intended to include the thirty-day executed portion of the sentence. "Indeed, typically sentencing courts order the probationary phase of a defendant's penalty to commence when the defendant completes the executed portion of his or her sentence and begins the suspended portion of his or her sentence." *Fry v. State,* 939 N.E.2d 687, 690 (Ind.Ct.App. 2010).

for the purposes of the statute includes both the executed and suspended portions of a sentence. For example, in *Collins,* the defendant received the maximum 365-day sentence for a Class A misdemeanor, with all but ten days suspended, plus 365 days of probation. 835 N.E.2d at 1018. This court concluded that Collins's term of imprisonment for the purposes of Indiana Code section 35–50–3–1(b) included not only his ten-day executed sentence, but also his 355–day suspended sentence. *Id.* Thus, because the executed and suspended portions of Collins's sentence totaled one year, he could not be sentenced to an additional period of probation.

Similarly, in *Copeland v. State,* the defendant was convicted of a Class A misdemeanor and sentenced to 365 days, all suspended, and an additional 180 days of probation. 802 N.E.2d 969, 972 (Ind.Ct. App.2004). This court held that the defendant's combined term of probation and imprisonment exceeded one year in violation of Indiana Code section 35–50–3–1(b) because "the rule applies to both executed and suspended terms of imprisonment." *Id.* at 972 n. 4. In reaching this conclusion, the court reasoned that:

> A 365–day sentence, whether suspended or served in the Department of Correction, is the maximum sentence … A suspended sentence is one actually imposed but the execution of which is thereafter suspended. Such a sentence is a definite sentence postponed so that the defendant is not required to serve his time in prison unless he commits another crime or violates some court-imposed condition[.]

*Id.* (quoting *Beck v. State,* 790 N.E.2d 520, 523 (Ind.Ct.App.2003) (Martingly–May, J., concurring in result)) (alterations in original, internal quotation marks omitted).

But other cases have construed the phrase "term of imprisonment" as it appears in Indiana Code section 35–50–3–1(b) to encompass only the executed portion of a sentence. For example, in *Beck,* the defendant was convicted of a Class A misdemeanor and received the maximum 365–day sentence, with 351 days suspended, plus 365 days of probation. 790 N.E.2d at 521–22. This court held that Beck's sentence violated Indiana Code section 35–50–3–1(b), but only to the extent that her combined *executed* sentence and term of probation exceeded one year. *Id.* at 523. Thus, the court remanded to the trial court for a redetermination of the term of probation, "not to exceed 351 days." *Id.* However, in her brief on appeal, Beck argued that her "probation cannot exceed 351 days, the difference between the statutory maximum one year sentence and the 14 days of her executed sentence." *Beck* Appellant's Brief, 2003 WL 25283089, at *8. Thus, because Beck did not raise the issue of whether her term of imprisonment included both her executed and suspended sentences, *Beck* cannot be considered authority for the proposition that a term of imprisonment for the purposes of Indiana Code section 35–50–3–1(b) includes only the executed portion of a sentence.

Likewise, in *Fry v. State,* the defendant was convicted of Class B misdemeanor battery and sentenced to 180 days, with thirty days executed and 150 days suspended, and 365 days of probation. 939 N.E.2d 687, 688 (Ind.Ct.App.2010). This court concluded that the defendant's combined terms of probation and imprisonment exceeded one year, in violation of the statute, but that his term of imprisonment for the purposes of the statute included only the executed portion of his sentence. *Id.* at 691. Thus, the court remanded to the trial court with instructions to "clarify or modify Fry's sentence as necessary so that the combined term of the *executed*

portion of Fry's sentence ... and his probation do not exceed one year." *Id.* (emphasis added). But in *Fry*, like in *Beck*, the defendant did not raise the specific issue of whether his term of imprisonment for the purposes of Indiana Code section 35–50–3–1(b) included both the executed and suspended portions of his sentence.[3] Because the issue was not squarely presented or addressed in *Fry*, that case is not controlling authority here.

We find our supreme court's decision in *Mask v. State*, 829 N.E.2d 932 (Ind.2005), instructive on the issue of whether a term of imprisonment for the purposes of Indiana Code section 35–50–3–1(b) includes both the executed and suspended portions of a sentence. In *Mask*, the court interpreted the statutory phrase "terms of imprisonment" as it appears in Indiana Code section 35–50–1–2(c) (2004), which provides that when a court imposes consecutive sentences for felonies other than crimes of violence,

> the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35–50–2–8 and IC 35–50–2–10, to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

In *Mask*, the defendant received the maximum three-year sentence on each of three Class D felony convictions arising out of a single episode of criminal conduct. 829 N.E.2d at 934–35. The court ordered that all three sentences be served consecutively, but suspended two of the sentences. *Id.* at 935. Thus, Mask received an aggregate sentence of nine years with three years executed and six years suspended. On appeal, Mask argued that his sentence violated Indiana Code section 35–50–1–2(c) because, "although he received only three years of executed time for the class D felonies in the December incident, the total time he received for that criminal episode (nine years) exceeds the four years that is the presumptive for a class C felony." *Id.* at 935. Our supreme court agreed, reasoning that:

> Incarceration in the context of subsection (c) does not mean the period of executed time alone. A suspended sentence differs from an executed sentence only in that the period of incarceration is delayed unless, and until, a court orders the time served in prison. In other words, the imposition of a suspended sentence leaves open the real possibility that an individual will be "sent to incarceration for some period" before being released from any penal obligation. This commonly occurs when probation or parole is revoked, and a defendant who received probation or parole is subject to incarceration until released.

**3.** In his appeal, Fry argued that his sentence could not exceed the 180–day statutory maximum for a Class B misdemeanor, regardless of its composition. *Fry* Appellant's Brief at 6 (not available on Westlaw). In support of this proposition, Fry cited *Jester v. State*, 746 N.E.2d 437, 439 (Ind.Ct.App.2001), in which this court held that "a prison sentence, the imposition of probation, or any combination of the two may not exceed the maximum term for the conviction." But Fry failed to note that *Jester* was handed down prior to the effective date of the 2001 amendment to Indiana Code section 31–50–3–1(b), allowing a trial court to place a misdemeanant on probation for one year, notwithstanding the maximum term of imprisonment for the offense, so long as the combined term of imprisonment and probation does not exceed one year. *See* 2001 Ind. Legis. Serv. P.L. 90–2001, § 1.

*Id.* at 936 (citation omitted). The court also noted that its conclusion was influenced by the rule of lenity, which requires that criminal statutes be strictly construed against the State. *Id.*

Based on the reasoning set forth by our supreme court in *Mask,* and this court's decisions in *Collins* and *Copeland,* we conclude that Jennings's term of imprisonment for the purposes of Indiana Code section 35–50–3–1(b) includes not only the thirty-day executed portion of his sentence, but also the 150–day suspended term. Thus, the trial court's imposition of a 360–day term of probation in addition to Jennings's 180–day term of imprisonment caused Jennings to serve more than one year of combined imprisonment and probation, in violation of Indiana Code section 35–50–3–1(b). We therefore remand this cause to the trial court for a redetermination of Jennings's period of probation, not to exceed 185 days.

### Conclusion

The State presented sufficient evidence to support Jennings's conviction. However, the trial court erred when it sentenced Jennings to a combined term of imprisonment and probation exceeding one year. We therefore remand to the trial court for a redetermination of Jennings's period of probation, not to exceed 185 days.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

BAILEY, J., and CRONE, J., concur.